Nelson GANDARILLAS–ZAMBRANA,
a/k/a Oscar Jr. Gandarillas, a/k/a
Nalson Gandarillos, Petitioner,

v.

BOARD OF IMMIGRATION
APPEALS, Respondent.

No. 94–1248.

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 3, 1994.

Decided Jan. 20, 1995.

**ARGUED:** Donald Louis Schlemmer, Washington, DC, for petitioner. Teresa Ann Wallbaum, U.S. Dept. of Justice, Washington, DC, for respondent. **ON BRIEF:** Claudia J. Zucker, Washington, DC, for petitioner. Frank W. Hunger, Asst. Atty. Gen., David J. Kline, Asst. Director, Office of Immigration Litigation, Civ. Div., U.S. Dept. of Justice, Washington, DC, for respondent.

Before ERVIN, Chief Judge, WIDENER, Circuit Judge, and PHILLIPS, Senior Circuit Judge.

Affirmed by published opinion. Senior Judge PHILLIPS wrote the opinion, in which Chief Judge ERVIN and Judge WIDENER joined.

## OPINION

PHILLIPS, Senior Circuit Judge:

Petitioner Nelson Gandarillas–Zambrana, a Bolivian national who has been ordered deported, appeals an order of the Board of Immigration Appeals ("BIA") denying his application for a discretionary waiver of deportation under section 212(c) of the Immigration and Nationality Act ("INA"), as amended 8 U.S.C. § 1182(c). Finding no abuse of discretion, we affirm the decision of the BIA.

### I.

Gandarillas is a native of Bolivia. He immigrated to the United States in 1981. While living in this country, Gandarillas has been convicted of a series of misdemeanor crimes in three states and the District of Columbia during the years between 1984 and 1992. Among these were two convictions in Virginia for petit larceny, one in 1988 and one in 1991, which became the basis for an Order to Show Cause why he should not be

deported, issued by the Immigration and Naturalization Service ("INS") in 1993.

Pursuant to the Show Cause order, Gandarillas appeared before an Immigration Judge ("IJ") in Oakdale, Louisiana. At this hearing, the IJ asked him if he could understand English, to which Gandarillas responded "yes." The IJ told Gandarillas to notify him if he could not understand something that was said in English. The IJ also notified him of his right to counsel, ensured that he had been given a list of free and inexpensive legal services, and postponed the hearing to allow him time to obtain counsel. Nevertheless, when the hearing resumed, Gandarillas appeared without counsel and, after being asked if he needed more time to find a lawyer, stated, "No. I would li—like to speak in my own behalf." AR at 143.

At the hearing, Gandarillas admitted the larceny convictions, thereby conceding deportability. He then applied for relief from deportation under section 212(c). At the relief hearing, the IJ confirmed that Gandarillas could understand English. Once again, Gandarillas appeared without counsel.

At this hearing, Gandarillas testified to the following facts. He is a citizen of Bolivia. He entered the United States as a legal permanent resident on September 14, 1981, at the age of 15 years. He has lived in the United States ever since, except for ten months during 1986 when he served in the Bolivian army. He worked for a construction company from 1985 to 1986, and, after returning from his military service in Bolivia, he worked for another construction company until 1991. He began work as a private security officer in 1991, and has also worked with his brothers doing construction work. He has not served in the American military.

Gandarillas has no relatives in Bolivia. His four brothers, two sisters, and his mother reside in America. His father is dead, and he is single with no children. No one living in America is financially dependant on him; his mother was disabled by a back injury, but his siblings are available to support her. He contributed $8,000 to the down payment on the $175,000 house in Virginia that he owns with his mother and siblings; he contributed to the mortgage except while in jail for petit larceny. His mother lives in that house with three of his siblings.

Besides the two petit larceny convictions, Gandarillas's criminal record includes convictions for failure to identify himself to police, possession of a concealed weapon (twice), assault against a police officer, destruction of property, assault (three times), theft, attempted theft (twice), harassment, and obstructing and hindering police. All of these were misdemeanors; many occurred in violation of probation. In addition, he was arrested for making terroristic threats and disorderly conduct, but fled the state before being tried. He has also been arrested for numerous other offenses including possession of marijuana, abduction, and conspiracy to commit burglary, but these charges were "nolle prossed" or dismissed in return for guilty pleas to other charges.

He was under the influence of alcohol at the time of many of his offenses, and admits to a drinking problem. He was expelled after one month of a three-month alcohol treatment program, but later completed a similar program while incarcerated. He claimed not to have drunk any alcohol during the year prior to his deportation hearing. He believes that remaining sober will be a challenge for him for the rest of his life. He hopes to return to school to earn a high school diploma, to find a job, and to return home to live with his mother. He testified that he believes that the Bolivian economy is poor but presented no proof. He expressed concern that his job prospects in Bolivia are slim, but admits that he can speak Spanish, the national language. Finally, Gandarillas submitted documents to support his claim of rehabilitation, including letters from family members, his employer, a member of a nonprofit dance troupe to which he belonged, and a Georgetown law student regarding Gandarillas's participation in the D.C. Street Law program. The IJ found that the tenor of these was generally pleading for a second chance for Gandarillas rather than testifying to his complete rehabilitation. He also submitted certificates of completion from an alcohol rehabilitation program and a vocational program.

The IJ considered the evidence and balanced the positive factors weighing in Gandarillas's favor against the negative factors evidencing his undesirability as a permanent resident. The IJ found that Gandarillas's "total criminal history ... [is] a serious adverse factor in the exercise of [the IJ's] discretion which may be overcome, if at all, only by a showing of outstanding or unusual equities," and that the "positive equities displayed by [Gandarillas] do not rise to the level of outstanding or unusual so as to outweigh the serious adverse factors of his long criminal record and long history of alcohol abuse." AR at 25–26. Consequently, the IJ exercised his discretion in favor of denying his application for waiver of deportation. The BIA affirmed, adopting without restating the IJ's reasoning. Gandarillas petitions this Court for review.

## II.

This Court has jurisdiction under 8 U.S.C. § 1105a to review only "final orders of deportation" entered after exhaustion of all administrative remedies. *Huaman–Cornelio v. BIA,* 979 F.2d 995, 999 (4th Cir.1992). Because the BIA is the highest administrative tribunal, we usually review only its findings and final order, rather than those of the IJ. *Id.* However, here the BIA adopted the findings and reasoning of the IJ in a one-paragraph per curiam opinion. We hereby adopt the rule of the Tenth Circuit and hold that if the BIA "chooses to rely on the express reasoning of the [IJ] ..., that reasoning will be the sole basis for our review, and if we find that reasoning inadequate, we will ... reverse the holding of the [IJ]." *Panrit v. INS,* 19 F.3d 544, 546 (10th Cir. 1994). The decision whether to grant a waiver of deportation is committed to the sound discretion of the Attorney General or her delegate (here, the IJ), and we review that decision for abuse of discretion. *Casalena v. INS,* 984 F.2d 105, 106 (4th Cir.1993).

Gandarillas actually seeks by his petition for review to challenge the agency decision on two levels. First, that in various respects the proceedings leading to that decision violated his constitutional due process rights. Second, that the decision itself involved an abuse of agency discretion by failing properly to weigh the relevant factors.

We will take these in order.

## III.

Gandarillas contends that the agency proceedings violated his rights to procedural due process in four ways: (1) by holding the waiver of deportation hearing at a place so distant from his place of residence that his right to counsel and to present witnesses was prejudiced; (2) by the IJ's failure to act impartially in the course of questioning him at the hearing; (3) by not providing him with a Spanish translator; and (4) by having him appear at the hearing in prisoner's clothing. He claims that these violations so prejudiced his rights to a fundamentally fair hearing that a new proceeding free of their prejudicial effects should be ordered.

At the outset, the INS contends that because these constitutional claims were not raised before the BIA, Gandarillas has waived them. Although a failure to raise claims before the BIA does ordinarily constitute a waiver that precludes their consideration on judicial review, *Farrokhi v. INS,* 900 F.2d 697, 700–01 (4th Cir.1990), Gandarillas urges us to recognize an exception to this general rule for denial of due process claims, as he contends the Ninth Circuit did in *Vargas v. Department of Immigration,* 831 F.2d 906, 908 (9th Cir.1987).

As we did in *Farrokhi,* we can avoid deciding here whether such an exception should be recognized and, if so, its scope, because here, as in *Farrokhi,* the claims are demonstrably without merit. *Farrokhi,* 900 F.2d at 701. While an alien is of course entitled to the constitutional protections of due process in deportation proceedings, *The Japanese Immigrant,* 189 U.S. 86, 100–01, 23 S.Ct. 611, 614–15, 47 L.Ed. 721 (1903), the alleged violations here do not rise even to the level of abuse of administrative or judicial discretion, not to say to the level of constitutional defects. In all the respects challenged, the proceedings were conducted in accordance with governing statutes and regulations which are not themselves challenged as unconstitutional.

■ First, holding the hearing in Louisiana violated no statutory or constitutional right. It was held in Oakdale, Louisiana because Gandarillas had been transferred to the permanent INS Federal Detention Center in that location from the temporary INS detention center in Arlington, Virginia after he failed to post bond. The INS necessarily has the authority to determine the location of detention of an alien in deportation proceedings, INA § 242(c), 8 U.S.C. § 1252(c), and therefore, to transfer aliens from one detention center to another. *Sasso v. Milhollan,* 735 F.Supp. 1045, 1048 (S.D. Fla.1990). The INA guaranteed Gandarillas the same rights and privileges at a deportation proceeding in Louisiana as it would elsewhere. *Id.,* at 1049. Accordingly, there is nothing inherently irregular, not to say unconstitutional, about the transfer from Virginia to Louisiana. Finally, viewed as a matter of venue, it must be noted that Gandarillas never moved for a change [1] but indicated his willingness to proceed at the scheduled hearing in Louisiana.

■ Furthermore, Gandarillas was not denied the right to counsel or the right to present witnesses and evidence by holding the hearing in Louisiana. Although an alien does not have a sixth amendment right to representation in a deportation proceeding, *Committee of Cent. Am. Refugees v. INS,* 795 F.2d 1434, 1439 (9th Cir.1986), he does have a statutory "privilege of legal representation at a deportation hearing at no expense to the government." *Delgado–Corea v. INS,* 804 F.2d 261, 262 (4th Cir.1986) (citing INA § 242(b), 8 U.S.C. § 1252(b)). However, he does not have the right to be detained where his ability to obtain representation is the greatest. *Sasso,* 735 F.Supp. at 1049 (citing *Committee of Cent. Am. Refugees,* 795 F.2d at 1437).

The IJ did all that was necessary to safeguard Gandarillas's statutory right to counsel when the IJ advised him of that right, gave him a list of free and inexpensive legal services in the area, and postponed the hearing to allow him time to secure representation.

*Delgado–Corea,* 804 F.2d at 262; AR at 138–39. Gandarillas waived that right by appearing without counsel when the hearing resumed and stating that he would prefer to represent himself rather than take more time to seek counsel. Moreover, he never claimed that the transfer had disrupted his relationship with counsel previously retained elsewhere nor did he present any support for his bald allegations that counsel was unavailable to him in Louisiana. On this record, it could not be held that holding the hearing in Louisiana effectively denied Gandarillas's right to counsel. *See Committee of Cent. Am. Refugees,* 795 F.2d at 1439–40.

■ Nor was his right to present witnesses and evidence violated by the transfer to and hearing in Louisiana. He had the same legal right to present witnesses and evidence in Louisiana that he would have had anywhere, and he has not demonstrated any practical prejudice to that right resulting from the hearing's location. He did in fact present evidence in the form of letters and documents. And he has failed to specify what additional evidence or witnesses he would have presented had the hearing taken place elsewhere, or why affidavits of those witnesses would have been insufficient. This lack of specificity is fatal to Gandarillas's claim; we could not determine whether the place of hearing violated his right to present evidence and witnesses without any record indication of the nature of evidence otherwise available to him and its potential importance to his claim. *See Maldonado–Perez v. INS,* 865 F.2d 328, 334–36 (D.C.Cir.1989) (holding that alien must name specific witnesses in order to prevail on change of venue motion); *cf. Baires v. INS,* 856 F.2d 89, 92–93 (9th Cir.1988) (holding that IJ abused discretion in refusing to change venue to city where alien had already retained counsel and where counsel had located three witnesses willing to testify).

■ Second, the IJ's questioning during the hearing did not violate Gandarillas's right to due process. The IJ has authority in a

---

1. 8 C.F.R. § 3.20 (1994) provides that the IJ "may change venue only upon motion by one of the parties."

deportation hearing to examine and cross-examine witnesses, including the deportee himself. INA § 242(b), 8 U.S.C. § 1252(b). While it might have been preferable for the IJ to limit himself to eliciting positive information of the type that counsel for Gandarillas might have elicited and to refrain from eliciting negative information so long as the U.S. Attorney was present to fulfill that function, we could not conclude that the IJ's questioning rose to the level of violating Gandarillas's statutory or constitutional rights. The IJ's questioning did not deprive Gandarillas of a fair and meaningful hearing—it was the most orderly means by which any mitigating information could be presented; it did not elicit false admissions; and Gandarillas had sufficient opportunity to add other information not elicited by the judge.

 Third, Gandarillas was not prejudiced by the lack of a Spanish translator at his hearings. Gandarillas argues that it is "self-evident" that his English was too poor for the hearing to be conducted without a translator present. It is true that an alien who does not understand English has the right to the services of a translator at his deportation hearing in order to effectuate his right to present evidence and cross-examine witnesses. *Drobny v. INS*, 947 F.2d 241, 244 (7th Cir.1991); *Tejeda–Mata v. INS*, 626 F.2d 721, 726 (9th Cir.1980), *cert. denied*, 456 U.S. 994, 102 S.Ct. 2280, 73 L.Ed.2d 1291 (1982). However, in the present case, the IJ confirmed several times that Gandarillas understood English. Furthermore, his answers were intelligible and responsive to the IJ's questions. Thus, the IJ's conclusion that Gandarillas's command of the English language was adequate to ensure a fair and meaningful hearing is amply supported by the record, and we could find no violation of statutory or constitutional right in the failure to provide a translator.

 Fourth, Gandarillas was not prejudiced by being made to appear at his hearings in prison clothing. He was wearing such clothes because he was being detained in relation to his deportation hearing, not pursuant to any conviction. The IJ knew this and had no reason to infer otherwise. In addition, there was nothing formally irregular about the procedure; INA regulations even authorize deportation proceedings to be conducted inside correctional facilities in certain instances. INA § 242a, 8 U.S.C. § 1252a. There is no evidence that Gandarillas's wearing prison clothing increased the IJ's consciousness of his criminal history or affected his judgment. We therefore could not find any violation of constitutional right in this aspect of the process.

## IV.

 Gandarillas's challenge to the ultimate discretionary decision to deny him waiver of deportation rests on the contention that the IJ did not properly weigh all the relevant factors in reaching that decision, and thereby abused his discretion. We disagree.

The BIA has set forth factors which should be considered during the decision whether to grant section 212(c) relief. The positive factors include:

> family ties within the United States, residence of long duration in this country (particularly when the inception of residence occurred while the [applicant] was of young age), evidence of hardship to the [applicant] and family if deportation occurs, service in this country's Armed Forces, a history of employment, the existence of property or business ties, rehabilitation if a criminal record exists, and other evidence attesting to [an applicant's] good character (e.g., affidavits from family, friends, and responsible community representatives).

*Casalena*, 984 F.2d at 107 (quoting *Matter of Marin*, 16 I & N Dec. 584 (BIA 1978)) (alteration in original).

Contrary to Gandarillas's allegations, the IJ did consider each of these factors.[2] He solicited information respecting each; found

---

2. We note that the IJ need not have done so explicitly so long as he announced his "decision in terms sufficient to enable a reviewing court to perceive that" he has thoughtfully considered the evidence. *Casalena*, 984 F.2d at 107 (quoting *Becerra–Jimenez v. INS*, 829 F.2d 996, 1000 (10th Cir.1987)).

that most of the factors did exist; and treated them as positive equities weighing in favor of section 212(c) relief. Specifically, the IJ found that Gandarillas had family ties in the United States (a mother and six siblings), that he had no family ties in Bolivia, that he had lived in the United States for twelve years since he was fifteen (the positive effect of which was diminished by his ten month return to Bolivia in 1986), that he and his family would experience emotional hardship if he was deported, that he might experience financial hardship if he was deported, that he had an extensive history of employment in the United States (interrupted by alcohol problems and incarceration), that he was a part owner of property in the United States, and that he had tried to rehabilitate himself through the alcohol rehabilitation and vocational programs. In addition, the IJ received and considered the documents and letters submitted on behalf of Gandarillas. On the down side, he observed that Gandarillas had not served in the U.S. military and that his mother would not suffer financially due to his deportation because she had other children to support her. Thus, the IJ considered each of the suggested positive factors and found all present except one.

■■■ Gandarillas argues in particular that the IJ erred in failing to find one factor: his rehabilitation. Although not necessarily dispositive, demonstrated rehabilitation is an important factor in the determination whether an alien with a criminal record should be granted section 212(c) relief from deportation. *Hazzard v. INS*, 951 F.2d 435, 439 (1st Cir.1991) (citing *Matter of Edwards*, Int. Dec. 3134 (BIA 1990); *Matter of Buscemi*, Int. Dec. 3058 (BIA 1988)). The Seventh Circuit has attempted to identify the factors that should be considered in the determination whether an alien is rehabilitated.

In this context, "rehabilitation" has two focuses. One is the restoration of an individual to a drug [or alcohol] free way of life. The other is more general, reformation or restoration to a way of life where future criminal conduct is unlikely. In both of these areas, achievement of rehabilitation is scarcely a readily determinable fact in the ordinary sense and the Board

necessarily makes a judgment call, involving an estimate or prediction of an individual's future conduct. To make this prediction, the Board has taken into consideration evidence of the nature and seriousness of the crime, repeat offenses, an applicant's remorse and admission of guilt, enrollment in a drug-treatment program or other indicia that an applicant is no longer addicted to drugs, and an applicant's candor in answering questions at the deportation hearing—that is, his credibility.

*Palacios-Torres v. INS*, 995 F.2d 96, 99–100 (7th Cir.1993) (footnote omitted). We adopt the Seventh Circuit's approach.

The IJ appears to have applied the above definition in the present case, whether consciously or not, and found that Gandarillas was lacking at least some of the indicia of genuine rehabilitation. For instance, he found that Gandarillas committed criminal offenses over the course of nine years and that he repeatedly violated the terms of his probation, committing various crimes while on probation for others. In addition, he was expelled from one alcohol abuse program because of an inability to refrain from drinking before eventually completing another. Furthermore, he admitted that he had a drinking problem and that he believed that remaining sober would always be a challenge. This cuts both ways: it shows candor, but indicates potential to revert to his previous pattern of alcohol abuse.

After considering these various factors, the IJ did not find rehabilitation to be completely lacking, but rather that Gandarillas's movements toward rehabilitation were relatively small compared to his failures in that regard. The IJ stated that he "could not find that a positive showing of genuine rehabilitation has been made.... [Gandarillas] has had many opportunities following each arrest to rectify his life and he has squandered those opportunities." AR at 26. Because the IJ considered the evidence relevant to the determination regarding rehabilitation and made a reasoned finding, we cannot conclude that his decision was arbitrary or capricious.

■■■ In addition, a finding that rehabilitation as well as the other positive equities, or *Marin* factors, exist does not auto-

matically entitle an alien to section 212(c) relief. The BIA must balance these against any adverse factors weighing against the propriety of granting the requested relief.[3] *Casalena,* 984 F.2d at 107. Furthermore, when an alien has a record of serious criminal activity, he must demonstrate "unusual or outstanding equities" in order to be eligible for a favorable exercise of discretion under section 212(c). *Casalena,* 984 F.2d at 107; *Ayala–Chavez v. INS,* 944 F.2d 638, 641 (9th Cir.1991); *Matter of Edwards,* Int.Dec. 3134, at 7 (BIA 1990); *Matter of Buscemi,* 19 I & N Dec. 628, 633–34 (BIA 1988). We could not conclude that the IJ erred in finding that a record of approximately fifteen convictions over nine years is a "record of serious criminal activity." In *Matter of Edwards,* the BIA found that an alien's pattern of criminal misconduct over ten years was serious enough to require a showing of unusual or outstanding equities before relief was appropriately granted. *Id.* at 9. *See also Akinyemi v. INS,* 969 F.2d 285, 288–89 (7th Cir. 1992) (one conviction for conspiracy and importing and possessing heroin was serious, even though it only involved one transaction and warranted only a five year sentence). In light of the precedent, the IJ's decision here to require Gandarillas to show unusual or outstanding equities was not arbitrary or capricious.

The IJ adequately considered all the *Marin* factors, then noted that the positive equities displayed by Gandarillas were not much different than the hardships to be suffered by any deportee and his family, and that therefore they did "not rise to the level of outstanding or unusual." AR at 25–26.[4] The IJ here did not fail to consider the evidence in Gandarillas's favor; rather, he considered the evidence and found it uncompelling in light of his criminal history and pattern of alcohol abuse. Thus, the balancing of equities and ultimate conclusion reached by the IJ was not arbitrary or capricious.

For the foregoing reasons, the order of deportation is

***AFFIRMED.***

---

3. The adverse *Marin* factors are: "the nature and underlying circumstances of the exclusion ground at issue, the presence of additional significant violations of this country's immigration laws, the existence of a criminal record and, if so, its nature, recency, and seriousness, and the presence of other evidence indicative of [an applicant's] bad character or undesirability as a permanent resident of this country." *Casalena,* 984 F.2d at 107 n. 4 (quoting *Marin* at 584 (alteration in original)).

4. Even if the positive equities were outstanding, this decision would still withstand scrutiny. "A showing of outstanding equities does not compel relief; in exercising its discretion, the BIA may determine that the seriousness of the offense and other negative factors outweigh even unusual or outstanding equities." *Akinyemi,* 969 F.2d at 288, *quoted in Casalena,* 984 F.2d at 107 n. 6.