**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JUDITH MABEL ALDANA,
Petitioner,

v.

U.S. IMMIGRATION & NATURALIZATION
SERVICE,
Respondent.

No. 97-2235

On Petition for Review of an Order
of the Board of Immigration Appeals.
(A73-700-729)

Submitted: February 10, 1998

Decided: March 9, 1998

Before MURNAGHAN and MOTZ, Circuit Judges, and
HALL, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Donald L. Schlemmer, Washington, D.C., for Petitioner. Frank W.
Hunger, Assistant Attorney General, Civil Division, Mark C. Walters,
Assistant Director, Christine A. Bither, Office of Immigration Litiga-
tion, UNITED STATES DEPARTMENT OF JUSTICE, Washington,
D.C., for Respondent.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Judith Mabel Aldana petitions for review of a final order of the Board of Immigration Appeals (Board) denying her application for asylum and withholding of deportation. Because substantial evidence supports the Board's decision, we affirm.

I

The Immigration and Nationality Act (Act) authorizes the Attorney General, in her discretion, to confer asylum on any refugee. See 8 U.S.C. § 1158(a) (1994). The Act defines a refugee as a person unwilling or unable to return to her native country "because of perse-cution or a well-founded fear of persecution on account of race, reli-gion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A) (1994); see M.A. v. INS, 899 F.2d 304, 307 (4th Cir. 1990) (in banc).

The "well-founded fear of persecution" standard contains both a subjective and an objective component. An applicant may satisfy the subjective element by presenting "`candid, credible, and sincere testi-mony' demonstrating a genuine fear of persecution." Berroteran-Melendez v. INS, 955 F.2d 1251, 1256 (9th Cir. 1992); see Figeroa v. INS, 886 F.2d 76, 79 (4th Cir. 1989). The objective element requires a showing of specific, concrete facts that would lead a rea-sonable person in like circumstances to fear persecution. See Huaman-Cornelio v. Board of Immigration Appeals, 979 F.2d 995, 999 (4th Cir. 1992).

The standard for withholding of deportation is more stringent than that for granting asylum. See INS v. Cardoza-Fonseca, 480 U.S. 421, 431-32 (1987). To qualify for withholding of deportation, an appli-cant must demonstrate a "clear probability of persecution." Id. at 430.

2

We must uphold the Board's determination that Aldana is not eligible for asylum if the determination is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." 8 U.S.C. § 1105a(a)(4) (1994). We accord the Board all possible deference. See Huaman-Cornelio, 979 F.2d at 999. The decision may be "reversed only if the evidence presented by [Aldana] was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed." INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992).

II

Aldana, a native and citizen of El Salvador, entered the United States without inspection on or about November 27, 1993. At the hearing, Aldana testified that she worked as a cook in the military barracks at Usulatan, El Salvador, from January 1991 until January 1993, when the barracks were disbanded following the signing of a peace treaty. After losing her position with the military, Aldana stayed at home with her five children and did laundry to earn a living.

Aldana testified that her cousin, Pedro Gonzalaz, was killed by the guerrillas on October 20, 1993. As a member of the military, Gonzalaz had helped Aldana obtain her position as a cook. After his death, Aldana received several threatening notes from the guerrillas on October 28 and 31, 1993, and November 3, 1993. Aldana left her country on November 10, 1993, after a group of armed men came looking for her at her mother's house. In anticipation of future problems, she had already obtained a passport on October 7, 1993. Aldana testified that she fears for her safety in El Salvador because she previously helped the military and because no one obeys the peace treaty. She did not know whether anyone who worked with her has been harmed by the guerrillas.

In support of her testimony, Aldana submitted copies of the three threatening notes on stationery of the guerrilla group FMLN. She also provided a certificate stating that she had worked for the military as a cook from January 1991 to November 1993. In addition, she supplied a copy of her cousin Gonzalaz's death certificate reporting that he died in October 1992. Aldana was not able to explain why the

3

information in this documentary evidence conflicted with her testimony.

Aldana takes issue with the finding of the IJ, affirmed by the Board, that she failed to establish eligibility for asylum. When, as here, the Board chooses to rely on the express reasoning of the IJ in a short per curiam opinion, that reasoning is the sole basis for our review and will be reversed if inadequate. See Gandarillas-Zambrana v. Board of Immigration Appeals, 44 F.3d 1251, 1255 (4th Cir. 1995).

Aldana maintains that the IJ failed to consider the absence of law and order in El Salvador. She also claims that she clearly established her eligibility for asylum and the IJ abused her discretion in denying her that relief. In addition, Aldana contends that she met the standard for withholding of deportation and that she was denied her right to a fair hearing in violation of the Fifth Amendment.

We conclude that substantial evidence supports the IJ's finding that Aldana did not meet her statutory burden. The record supports the IJ's conclusion that Aldana did not establish that her fear of persecution by the guerrillas is countrywide. See Matter of Acosta, 19 I. & N. Dec. 211, 235 (BIA 1985). Noting that the level of violence in El Salvador remains high, the Department of State country report in evidence states that the option of relocation is available to fearful citizens residing in zones such as Usulatan, where guerrillas remain active. As the IJ noted, Aldana did not establish that she could not have relocated safely to another part of El Salvador. In light of this finding, Aldana's claim that the IJ abused her discretion is misplaced. Because the IJ found Aldana ineligible for asylum under the statute, she never reached the issue of whether Aldana merited asylum as a matter of discretion. See M.A., 899 F.2d at 307.

The record also supports the IJ's conclusion that Aldana did not suffer past persecution. In order to establish eligibility for asylum based on past persecution alone, an alien must show past persecution so severe that repatriation would be inhumane. See Baka v. INS, 963 F.2d 1376, 1379 (10th Cir. 1992). Aldana's experience simply does not rise to that level, and contrary to Aldana's assertions, fear of general violence and unrest in her country does not support a claim of asylum. See M.A., 899 F.2d at 315.

4

We also find that the record supports the IJ and Board's conclusion that Aldana failed to adequately explain inconsistencies between her testimony and documentary evidence she provided. While Aldana claimed she left El Salvador based on a series of events beginning with the murder of her cousin on October 20, 1993, the death certificate she produced reports he died in October 1992. Moreover, the certificate of employment she provided states that she worked until November 1, 1993 rather than January 1993. These discrepancies, in conjunction with the fact that Aldana obtained a passport on October 7, 1993, suggest that she may have left the country for reasons other than fear of persecution. Even if Aldana's testimony were true, the IJ observed that Aldana did not invoke the protection of the authorities even though she admitted that they may have been able to assist her. Finally, Aldana provides no evidence to support her claim that she was denied a fair hearing.

As Aldana has not established entitlement to asylum, she cannot meet the higher standard for withholding of deportation. We accordingly affirm the Board's order. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED