UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

COMFORT AFRIYIE SARPONG-WARREN,
Petitioner,

v.

U.S. IMMIGRATION & NATURALIZATION
SERVICE,
Respondent.

No. 98-1254

On Petition for Review of an Order
of the Board of Immigration Appeals.
(A70-670-499)

Submitted: July 31, 1998

Decided: August 13, 1998

Before WILLIAMS, MICHAEL, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Ana T. Jacobs, ANA T. JACOBS & ASSOCIATES, Washington,
D.C., for Petitioner. Frank W. Hunger, Assistant Attorney General,
David V. Bernal, Assistant Director, Laura M. Friedman, Office of
Immigration Litigation, UNITED STATES DEPARTMENT OF JUS-
TICE, Washington, D.C., for Respondent.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Comfort Afriyie Sarpong-Warren petitions for review of a final order of the Board of Immigration Appeals (Board) denying her application for asylum and withholding of deportation. Because substantial evidence supports the Board's decision, we affirm.

The Immigration and Nationality Act (Act) authorizes the Attorney General, in her discretion, to confer asylum on any refugee. See 8 U.S.C.A. § 1158(b)(1) (West Supp. 1998). The Act defines a refugee as a person unwilling or unable to return to her native country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C.A. § 1101(a)(42)(A) (West Supp. 1998); see M.A. v. INS, 899 F.2d 304, 307 (4th Cir. 1990) (in banc).

The "well-founded fear of persecution" standard contains both a subjective and an objective component. An applicant may satisfy the subjective element by presenting "`candid, credible, and sincere testimony' demonstrating a genuine fear of persecution." Berroteran-Melendez v. INS, 955 F.2d 1251, 1256 (9th Cir. 1992); see Figeroa v. INS, 886 F.2d 76, 79 (4th Cir. 1989). The objective element requires a showing of specific, concrete facts that would lead a reasonable person in like circumstances to fear persecution. See Huaman-Cornelio v. Board of Immigration Appeals, 979 F.2d 995, 999 (4th Cir. 1992).

Eligibility for asylum can also be based on grounds of past persecution alone even though there is "`no reasonable likelihood of present persecution.'" Baka v. INS, 963 F.2d 1376, 1379 (10th Cir. 1992) (quoting Rivera-Cruz v. INS, 948 F.2d 962, 969 (5th Cir. 1991)). "To establish such eligibility, an alien must show past persecution so severe that repatriation would be inhumane." Id.; see Matter of Chen, 20 I. & N. Dec. 16 (BIA 1989).

2

We must uphold the Board's determination that Sarpong-Warren is not eligible for asylum if the determination is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." 8 U.S.C. § 1105a(a)(4) (West Supp. 1998).* We accord the Board all possible deference. See Huaman-Cornelio, 979 F.2d at 999. The decision may be "reversed only if the evidence presented by [Sarpong-Warren] was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed." See INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992).

Sarpong-Warren, who entered the United States with a visitor's visa in September 1991, disagrees with the Board's finding that she failed to establish past persecution or a well-founded fear of future persecution in her home country based on her political opinion or social group. Our review reveals, however, that substantial evidence supports the Board's finding that Sarpong-Warren did not satisfy her statutory burden.

Evidence established that Sarpong-Warren, a native and citizen of Ghana, worked as a trader of second-hand clothing in one of the markets in her city. The market is owned by the 31st December Women's Movement which is led by Ghana's first lady, Nanakonadu Agyeman Rawlings. In January 1991, Sarpong-Warren arrived at her stall to find twenty men waiting for her. They detained her for six hours, interrogated her, and asked her to join the 31st December Women's Movement. She refused and was released.

Sarpong-Warren further testified that she continued doing business from her stall at the market until February 1991 when she was arrested, asked again to join the movement, and detained at the central police station for two days. She was charged with selling in an unauthorized place and beaten with canes and belts. When her family brought money to the police, Sarpong-Warren was released and given

_____

*We note that 8 U.S.C. § 1105a(a)(4) was repealed by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-128, 110 Stat. 3009 (IIRIRA), effective April 1, 1997. Because this case was in transition at the time the IIRIRA was passed, 8 U.S.C. § 1105a(a)(4) is still applicable under the terms of the transitional rules contained in § 309(c) of the IIRIRA.

3

a court date. She returned to a different stall at the market but never appeared in court on the charges. Consequently, she was arrested again in August 1991 and was raped while in jail. She was released again when her family brought money and given a February 1992 court date. As a result of the rape, Sarpong-Warren and her husband separated. After her release, Sarpong-Warren found her stall at the market had been burned. In September 1991, she relocated to the United States.

Citing her detention, beating, and rape, Sarpong-Warren maintains that in adopting the opinion of the IJ, the Board erred in finding that she failed to demonstrate past persecution and a well-founded fear of future persecution on account of her political opinion or membership in a particular social group. Specifically, she argues that the IJ failed to interpret "social group" correctly and incorrectly determined that she had not tried to change markets or locations for her business. In addition, she contends that losing a means of livelihood constitutes persecution and that the rape was on account of her political opinion because it occurred during detention. She also takes issue with the IJ's negative credibility finding. Sarpong-Warren raised none of these specific assignments of error in her appeal to the Board. We therefore find that they have been waived. See Gandarillas-Zambrana v. INS, 44 F.3d 1251, 1255 (4th Cir. 1995); Farrokhi v. INS, 900 F.2d 697, 700-01 (4th Cir. 1990).

We also conclude that substantial evidence supports the IJ's finding that Sarpong-Warren's account lacked credibility and that there was insufficient evidence in the record to support her claim. The IJ noted that Sarpong-Warren testified inaudibly and often responded vaguely to questions. While the IJ realized the possibility of language difficulties, she noted that no interpreter had been requested and that Sarpong-Warren had ten years of education in English. In addition, Sarpong-Warren failed to mention her beating or the burning of her stall in her asylum application and testified inconsistently in several respects. Most significantly, Sarpong-Warren failed to present sufficient evidence demonstrating that she was beaten, raped, or denied the stall to conduct her business because of her social group or political opinion. The record contains very little information about the 31st December Women's Movement and does not support Sarpong-Warren's claim that she was persecuted on account of her Ashanti

4

heritage. As the IJ stated, the State Department report acknowledges the general abuse of women in Ghana and violence against persons in pretrial detention. The IJ further noted that the arrest warrant presented as evidence by Sarpong-Warren appeared to have been altered and was thus of dubious authenticity.

Finally, Sarpong-Warren contends that in adopting the IJ's decision, the Board failed to adequately address the issues raised in her appeal. We find no evidence to support this claim. The Board squarely addressed the specific issues raised by Sarpong-Warren, but noted that her objections to the IJ's finding that she did not qualify for relief were too general to address in that they failed to mention specific findings of fact or conclusions of law believed to be in error.

The standard for withholding of deportation is more stringent than that for granting asylum. See INS v. Cardoza-Fonseca, 480 U.S. 421, 431-32 (1987). To qualify for withholding of deportation, an applicant must demonstrate a "clear probability of persecution." Id. at 430. As Sarpong-Warren has not established entitlement to asylum, she cannot meet the higher standard for withholding of deportation.

We accordingly affirm the Board's order. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED