**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

OWUSU SAMPA ENNIN,
Petitioner,

v.

U.S. IMMIGRATION & NATURALIZATION
SERVICE,
Respondent.

No. 98-1511

On Petition for Review of an Order
of the Board of Immigration Appeals.
(A70-846-002)

Submitted: October 30, 1998

Decided: November 16, 1998

Before WILLIAMS and HAMILTON, Circuit Judges, and
HALL, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Eric R. Bowman, Langley Park, Maryland, for Petitioner. Frank W.
Hunger, Assistant Attorney General, Michelle Gluck, Senior Litiga-
tion Counsel, Regina Byrd, Office of Immigration Litigation,
UNITED STATES DEPARTMENT OF JUSTICE, Washington,
D.C., for Respondent.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Owusu Sampa Ennin petitions for review of a final order of the Board of Immigration Appeals (Board) denying his application for asylum and withholding of deportation. Because substantial evidence supports the Board's decision, we affirm.

The Immigration and Nationality Act (Act) authorizes the Attorney General, in her discretion, to confer asylum on any refugee. See 8 U.S.C.A. § 1158(a) (West Supp. 1998). The Act defines a refugee as a person unwilling or unable to return to his native country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C.A. § 1101(a)(42)(A) (West Supp. 1998); see M.A. v. INS, 899 F.2d 304, 307 (4th Cir. 1990) (in banc).

The "well-founded fear of persecution" standard contains both a subjective and an objective component. An applicant may satisfy the subjective element by presenting "`candid, credible, and sincere testi-mony' demonstrating a genuine fear of persecution." Berroteran-Melendez v. INS, 955 F.2d 1251, 1256 (9th Cir. 1992) (citation omit-ted); see Figeroa v. INS, 886 F.2d 76, 79 (4th Cir. 1989). The objec-tive element requires a showing of specific, concrete facts that would lead a reasonable person in like circumstances to fear persecution. See Huaman-Cornelio v. Board of Immigration Appeals, 979 F.2d 995, 999 (4th Cir. 1992).

We must uphold the Board's determination that Ennin is not eligi-ble for asylum if the determination is "supported by reasonable, sub-stantial, and probative evidence on the record considered as a whole." 8 U.S.C. § 1105a(a)(4) (1994).* We accord the Board all possible

_____

*We note that 8 U.S.C. § 1105a(a)(4) was repealed by the Illegal Immigration Reform Immigrant Responsibility Act of 1996, Pub. L. No.

2

deference. See Huaman-Cornelio, 979 F.2d at 999. The decision may be "reversed only if the evidence presented by[Ennin] was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed." INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992).

Ennin, who entered the United States as a visitor in August 1991, disagrees with the Board's finding that he failed to qualify for asylum and withholding of deportation. After a thorough review of the administrative record, we conclude that substantial evidence supports the Board's finding that Ennin did not satisfy his statutory burden.

Evidence established that Ennin, a native and citizen of Ghana, was awarded a four-year scholarship by the Ashanti Goldfields Corporation (AGC) to attend college for the study of engineering. During the eighteen years he worked for AGC, Ennin became the supervisor of twenty to twenty-five mechanics. In 1973 while still a student, Ennin became a member of the Adansi Youth Movement (ADU). Ennin testified that the ADU protested against the Ghanian government because of its failure to provide basic public services and to safeguard the environment from the surface mining conducted by AGC. According to Ennin, the ADU was concerned about the quality of the drinking water which they contended was being polluted by the deep shaft mining conducted by AGC. Although Ennin claimed to have demonstrated against his employer throughout his years as an employee, he never encountered any problems with his job.

Ennin testified that AGC did not begin surface mining until 1991. In June of that year, the ADU held a demonstration of more than 500 individuals to protest the AGC's surface mining projects. The Youth Movement members of the ADU formed a human chain at the demonstration to block the surface mining workers. Over one hundred armed militia men were deployed to the site by the Ghanian govern-

_____

104-128, 110 Stat. 3009 (IIRIRA), effective April 1, 1997. Because this case was in transition at the time the IIRIRA was passed, 8 U.S.C. § 1105a(a)(4) is still applicable under the terms of the transitional rules contained in § 309(c) of the IIRIRA.

3

ment. A militia man fired a shot into the air, but the demonstrators stood firm.

Ennin testified that militia men singled out him and his half brother from the human chain and accused them of instigating the demonstration. Six militia men surrounded them, and a scuffle between the half brother and the militia ensued in which the half brother was arrested. The militia also attempted to arrest Ennin but he escaped by holding three of them off with a baton, jumping over them and then "going underground." Ennin claimed that the militia men who arrested his half brother and tried to arrest him did not have guns. Ennin testified that no one was killed in the demonstration, although he later learned of his half brother's death.

Nearly one month after the demonstration in July 1991, the wife of the secretary general of the Youth Movement transported Ennin to the Ivory Coast in her car. Ennin remained in the Ivory Coast for a week and then entered the United States with a visitor visa.

Ennin takes issue with the IJ and Board's negative credibility finding, contending that it is not supported by the record and insisting that he has demonstrated a well-founded fear of persecution in Ghana due to his political opinion. When, as here, the Board chooses to rely on the express reasoning of the IJ in a short per curiam opinion, that reasoning is the sole basis for our review and will be reversed if inadequate. See Gandarillas-Zambrana v. Board of Immigration Appeals, 44 F.3d 1251, 1255 (4th Cir. 1995).

We find that substantial evidence supports the IJ's finding that Ennin's testimony lacked credibility and that he was therefore ineligible for the requested relief. The IJ found parts of Ennin's testimony to be inconsistent with his asylum application. For example, Ennin testified that he had not communicated with his wife since he left Ghana in 1991. However, in his asylum application, Ennin reported that his wife has been harassed by the authorities since he left Ghana in 1991. In addition, the IJ identified an inconsistency between Ennin's testimony and the written statement provided by his United States citizen brother, Balfour Owusu Ennin. While Ennin testified that no one was killed in the June 1991 demonstration, Balfour stated that five people were killed. The IJ also noted that Balfour was not

4

present at the merits hearing even though he lived only a few minutes from the court and that he merely submitted an undated, unsworn statement which tended to undercut Ennin's testimony in several respects.

The IJ further observed that while Ennin testified he was married in 1973, his Form G-325 (Biographic Information Form) showed his marriage date as August 10, 1981. In addition, while Ennin testified that he left his gold mine employment at the time of the demonstration in June 1991, his Form G-325 indicates he remained so employed until August 1991. The IJ found Ennin's explanation that he was on paid leave until August 1991 to be unconvincing.

In addition, the IJ found lacking in credibility Ennin's claim that he had demonstrated against his employer because of his claimed disapproval of surface mining. Despite Ennin's stated concern about the ecological problems caused by gold mining, the IJ noted that Ennin earned his living from the mining company and so contributed to the ecological problems for eighteen years. Moreover, the IJ observed that Ennin's claim that the ecological problems became serious only in 1991 was contradicted by his brother Balfour's statement that gold mining had caused an ecological disaster in the area, including polluting drinking water, for over a hundred years.

Finally, the IJ cited Ennin's testimony that he had participated in a demonstration held during Ghanian President Rawlings' visit to the United States. Ennin testified that he received a letter from a friend in Ghana who informed him that his picture had been taken at the demonstration and was shown on Ghanian television. The IJ noted that Ennin failed to submit the letter as evidence or show it to his attorney despite his claim that he had kept the letter for more than a year. The letter was not in Ennin's file or mentioned in the accompanying notes, despite Ennin's claim that he showed it to the asylum officer who interviewed him.

After outlining the basis of his adverse credibility finding, the IJ found that Ennin failed to corroborate his story with available evidence, such as the testimony of his United States citizen brother who lived nearby and the letter from the individual who claimed to have seen Ennin on Ghanian television. While Ennin attempts to explain

5

the inconsistencies and offers alternative interpretations of the evidence favorable to his credibility, we agree with the Service that Ennin should have explained himself to the IJ and that it is too late to supplement his testimony. Ennin also appears to claim that the IJ's statement that United States asylum laws are not very generous demonstrates that the IJ prejudged the case and failed to use all available immigration law in his decision making. We find no evidence whatsoever to support such a claim. Finally, Ennin attacks the Board, claiming it failed to review the record and consider his arguments because it affirmed based on the reasoning of the IJ. This claim is utterly without merit because the adoption of the IJ's reasoning by the Board is a valid practice of review. See Alaelua v. INS , 45 F.3d 1379, 1381-82 (9th Cir. 1995).

Finally, Ennin insists he qualified for withholding of deportation. The standard for withholding of deportation is more stringent than that for granting asylum. See INS v. Cardoza-Fonseca, 480 U.S. 421, 431-32 (1987). To qualify for withholding of deportation, an applicant must demonstrate a "clear probability of persecution." Id. at 430. Because substantial evidence supports the Board's finding that Ennin is ineligible for asylum, he cannot meet the higher standard for withholding of deportation.

We accordingly affirm the Board's order. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

6