**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ANCHINESH MENGISTU,
Petitioner,

v.

                                        No. 98-2003

U.S. IMMIGRATION & NATURALIZATION
SERVICE,
Respondent.

On Petition for Review of an Order
of the Board of Immigration Appeals.
(A70-802-532)

Submitted: March 9, 1999

Decided: March 29, 1999

Before ERVIN, LUTTIG, and MICHAEL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Onyebuchi N. Enechionyia, Arlington, Virginia, for Petitioner. Frank
W. Hunger, Assistant Attorney General, Mark C. Walters, Assistant
Director, Teresa A. Wallbaum, Office of Immigration Litigation,
UNITED STATES DEPARTMENT OF JUSTICE, Washington,
D.C., for Respondent.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Anchinesh Mengistu petitions for review of a final order of the Board of Immigration Appeals (Board) denying her application for asylum and withholding of deportation. Because substantial evidence supports the Board's decision, we affirm.

The Immigration and Nationality Act (Act) authorizes the Attorney General, in her discretion, to confer asylum on any refugee. See 8 U.S.C.A. § 1158(b)(1) (West Supp. 1998). The Act defines a refugee as a person unwilling or unable to return to her native country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C.A. § 1101(a)(42)(A) (West Supp. 1998); see M.A. v. INS, 899 F.2d 304, 307 (4th Cir. 1990) (en banc).

The "well-founded fear of persecution" standard contains both a subjective and an objective component. An applicant may satisfy the subjective element by presenting "`candid, credible, and sincere testimony' demonstrating a genuine fear of persecution." Berroteran-Melendez v. INS, 955 F.2d 1251, 1256 (9th Cir. 1992) (citation omitted); see Figeroa v. INS, 886 F.2d 76, 78-79 (4th Cir. 1989). The objective element requires a showing of specific, concrete facts that would lead a reasonable person in like circumstances to fear persecution. See Huaman-Cornelio v. Board of Immigration Appeals, 979 F.2d 995, 999 (4th Cir. 1992).

Eligibility for asylum can also be based on grounds of past persecution alone even though there is "`no reasonable likelihood of present persecution.'" Baka v. INS, 963 F.2d 1376, 1379 (10th Cir. 1992) (quoting Rivera-Cruz v. INS, 948 F.2d 962, 969 (5th Cir. 1991)). To establish such eligibility, an alien must show past persecution so severe that repatriation would be inhumane. See id.; Matter of Chen, 20 I. & N. Dec. 16 (BIA 1989).

2

We must uphold the Board's determination that Mengistu is not eligible for asylum if the determination is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." 8 U.S.C. § 1105a(a)(4) (West Supp. 1998).* We accord the Board all possible deference. See Huaman-Cornelio, 979 F.2d at 999. The decision may be "reversed only if the evidence presented by [Mengistu] was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed." INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992).

Mengistu disagrees with the Immigration Judge's (IJ) finding, adopted by the Board, that she failed to establish past persecution or a well-founded fear of future persecution in her home country based on her political opinion. Our review reveals, however, that substantial evidence supports the Board's finding that Mengistu did not satisfy her statutory burden.

Evidence established that Mengistu, a thirty-one year old single female native and citizen of Ethiopia, lived in Debre Zeit and was employed in a flour mill. Mengistu testified that her father and two of her uncles were killed by government troops when she was thirteen years old. In January 1992, she and two others approached the office of the Ethiopian People's Revolutionary Democratic Front, which represents the government of Ethiopia in that particular region. Mengistu and her companions protested the discharge of her fellow Amharians from the flour mill at which she was employed and their replacement with the local indigenous peoples who were members of the Oromo tribe.

Mengistu claims that as a result of this protest she was arrested and detained for a period of approximately thirty days, until February 25, 1992. She contends that she was detained for thirty days because of her membership in the Ethiopian People's Revolutionary Party

_____

*We note that 8 U.S.C. § 1105a(a)(4) was repealed by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-128, 110 Stat. 3009 (IIRIRA), effective April 1, 1997. Because this case was in transition at the time the IIRIRA was passed, 8 U.S.C. § 1105a(a)(4) is still applicable under the terms of the transitional rules contained in § 309(c) of the IIRIRA.

3

(EPRP), which she joined in 1990. She testified that during her thirty-day detention she was interrogated on one occasion. She testified that she was then able to make arrangements for the payment of a bribe and was released by her captors. Following her release from detention, Mengistu moved from Debre Zeit to Addis Ababa. She departed Ethiopia on April 2, 1992, and entered the United States on a visitor's visa on April 3, 1992.

The Board adopted and affirmed the IJ's decision. Thus, the IJ's reasoning is the sole basis of our review and will be reversed if inadequate. See Gandarillas-Zambrana v. Board of Immigration Appeals, 44 F.3d 1251, 1255 (4th Cir. 1995). The IJ found Mengistu credible, but concluded that Mengistu did not meet her burden of establishing that she was a victim of past persecution or has a well-founded fear of future persecution on a ground protected under the Act. The IJ found that while Mengistu may possess a subjective fear of persecution, she did not establish that a reasonable person in her circumstances would fear persecution on account of one or more of the five protected grounds. The IJ further found that her period of detention did not rise to the level of persecution and observed that it was not unreasonable at the time of her detention for a member of the EPRP to be detained and examined regarding her membership in this particular political organization. The IJ noted that according to the Department of State, the EPRP is known, at least in part, for its aggressive practices and policies regarding the stability of the Ethiopian government. The IJ, therefore, determined that it was a reasonable application of the Ethiopian sovereignty to interrogate Mengistu regarding her membership in the EPRP. The IJ also noted that the interrogation was on only one occasion in Mengistu's thirty days of detention and she testified that she was not physically abused. Although she may have been verbally abused, she did not offer any evidence of a particular physical assault or other type of assault that could be characterized as an act which would rise to the level of persecution.

Mengistu next contends that she belongs to a group of people, an ethnic Amharian who is a member of the EPRP, with respect to whom there is a pattern of persecution. See 8 C.F.R. § 208.13(b)(2). As the IJ noted, however, Mengistu did not offer either testamentary evidence or documentary evidence which would corroborate her assertions that the reason she was arrested and detained was because of her

4

EPRP membership. Although Mengistu submitted a document which authenticated her EPRP membership while she was in the United States, she did not offer any testamentary evidence, such as a representative of the EPRP, which would corroborate her testimony that she was a member of EPRP while she resided in Ethiopia. Thus, the IJ found it plausible that she was interrogated because of her protest of the discharge of her colleagues rather than her EPRP membership. We conclude that these findings are supported by substantial evidence.

Lastly, Mengistu failed to demonstrate that there was a country-wide atmosphere of persecution. See Matter of Acosta, 19 I. & N. Dec. 211, 235 (BIA 1985). Mengistu moved from Debre Zeit to the capital of Ethiopia, Addis Ababa. She testified that while she was in Addis Ababa there was a shortage of jobs. She did not testify that she was unsafe in Addis Ababa. The IJ, therefore, reasoned that Mengistu has chosen the United States as her country of choice and is not fleeing persecution but, rather, the difficult economic conditions that exist in Ethiopia today. These findings constitute substantial evidence to support the Board's denial of asylum.

The standard for withholding of deportation is more stringent than that for granting asylum. See INS v. Cardoza-Fonseca, 480 U.S. 421, 431-32 (1987). To qualify for withholding of deportation, an applicant must demonstrate a "clear probability of persecution." Id. at 430. As Mengistu has not established entitlement to asylum, she cannot meet the higher standard for withholding of deportation.

We accordingly affirm the Board's order. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

5