**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 05-1764

JEMMY RAMPENGAN,

Petitioner,

versus

ALBERTO R. GONZALES, United States Attorney
General,

Respondent.

On Petition for Review of an Order of the Board of Immigration
Appeals.  (A97-188-511)

Argued:  September 19, 2006        Decided:  November 17, 2006

Before MICHAEL and GREGORY, Circuit Judges, and Thomas E. JOHNSTON,
United States District Judge for the Southern District of West
Virginia, sitting by designation.

Petition for review granted; vacated and remanded by unpublished
opinion.  Judge Gregory wrote the opinion, in which Judge Michael
and Judge Johnston joined.

**ARGUED:** Alexander Manjanja Chanthunya, Silver Spring, Maryland, for
Petitioner.  Lindsay L. Chichester, UNITED STATES DEPARTMENT OF
JUSTICE, Washington, D.C., for Respondent.  **ON BRIEF:** Peter D.
Keisler, Assistant Attorney General, Carol Federighi, Office of
Immigration Litigation, Allison Cendali, Civil Division,  UNITED
STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

GREGORY, Circuit Judge:

Petitioner Jemmy Rampengan seeks review of the ruling of the Board of Immigration Appeals (BIA) denying him and his family withholding of removal. The BIA, without making its own factual findings, affirmed the decision of the immigration judge, who found Rampengan's testimony incredible. Because the immigration judge did not provide specific and cogent reasons for discrediting Rampengan's testimony, we grant the petition, vacate the BIA's decision, and remand the case for further proceedings consistent with this opinion.

I.

According to the declaration he filed with his application for asylum, Rampengan, who is Christian, was born in Indonesia and lived there before arriving in the United States. In 1998, while visiting a business associate and prominent Christian leader named Herman Parimo, he was kidnapped by a group of Muslims, beaten, and held captive without food for twelve hours. His captors assailed him with questions about Parimo, called him a "bastard Christian," and broke the middle finger of his right hand, which remains crippled.

In February of 1999, Rampengan received threatening phone calls at least once a week seeking information about Parimo. That July a stranger gave Rampengan's daughter a note, warning: "watch

3

out, your daughter would be gone." In January 2000, Rampengan received at least one more threatening phone call demanding information about Parimo. One year later, Rampengan asserts, Muslims attacked him in his church and destroyed the edifice. The attackers separated the men from the women and hit Rampengan over the head with a club. Finally, in June 2001, Muslims allegedly stoned the house of Rampengan's father-in-law, in which Rampengan and others were conducting a prayer meeting that included the singing of Christian songs. Rampengan applied for a visa to come to the United States, received it on July 25, 2001, and departed Indonesia with his family on August 25, 2001.

Rampengan and his family remained in the United States past the visas' February 2002 expiration date and filed for asylum and withholding of removal early in 2003. In August of 2003, Rampengan appeared before an immigration judge who denied him and his family voluntary departure, asylum, withholding of removal, and protection under the Convention Against Torture (CAT). Immigration Judge John M. Bryant denied them voluntary departure because Rampengan could not post the necessary bond and denied asylum because Rampengan applied too late.[1] In June 2005 the BIA affirmed the immigration judge's decision. Rampengan timely filed a petition for review in this Court.

---

[1]Rampengan does not contest those rulings. He argues only that Judge Bryant and the BIA improperly denied withholding of removal.

Because the BIA's opinion contains no analysis beyond that in the immigration judge's decision and makes no additional findings of fact, we review the reasoning in the immigration judge's decision. See Gandarillas-Zambrana v. Board of Immigration Appeals, 44 F.3d 1251, 1255 (4th Cir. 1995). Judge Bryant ruled that Rampengan did not qualify for withholding of removal because he had not met his burden of proof: he failed to demonstrate that there was a clear probability he would be persecuted because of his religion if he returned to Indonesia. The judge found insufficient evidence of future persecution to warrant withholding of removal and waved off evidence of past persecution as incredible.

Rampengan contends that he demonstrated he was persecuted in Indonesia on account of his religion and that such persecution entitles him to a rebuttable presumption that withholding of removal is appropriate under 8 C.F.R. § 1208.16(b)(1)(I) (2006). His claims of past persecution are supported almost entirely by his own testimony, but that testimony, if credible, may suffice to meet his burden of proof. See 8 C.F.R. § 1208.16(b). Judge Bryant, however, found Rampengan's testimony to be unreliable.

Although we afford substantial deference to the credibility determinations of immigration judges in asylum proceedings, we require that a judge who rejects a witness's testimony as incredible provide a specific and cogent reason for her disbelief.

See Figeroa v. I.N.S., 886 F.2d 76, 78 (4th Cir. 1989). In the instant case, Judge Bryant found that Rampengan's tardy petition for asylum undermined his entire testimony. According to the judge, "no reasonable person, if he or she had experienced the experiences which the respondent asserted were experienced by them [sic], would not, in the normal course and straightaway, make application for asylum." (J.A. 35.) This reason, although specific, is not particularly cogent. Cf. Tewabe v. Gonzales, 446 F.3d 533, 538 (4th Cir. 2006) ("Examples of specific and cogent reasons include inconsistent statements, contradictory evidence, and inherently improbable testimony . . . ." (internal quotation marks omitted)). At no point in Rampengan's testimony was he asked why he did not submit his application for asylum sooner, and Judge Bryant's decision nowhere discusses the justification Rampengan offered in the application itself.[2] A person's tardy filing of an application for asylum, without more, is simply an insufficiently impelling reason to conclude that the entirety of the person's testimony is dubious. Cf. id. at 540 (rejecting an immigration judge's adverse credibility determination that was based on the early filing of a witness's application for asylum).

---

[2]Rampengan explained in his application for asylum that he did not file for asylum within one year of his arrival in the United States because he was "depressed and confused." (Supp. J.A. 64.) Part C of the application indicated that Rampengan should be prepared to explain himself further at his interview or hearing, but the record contains no indication that he was ever questioned on the matter.

Judge Bryant also doubted Rampengan's testimony because a letter from Rampengan's Indonesian pastor failed to corroborate Rampengan's account of his church's destruction. The letter, which states only that Rampengan and his family members are obedient Christians of good moral character, is dated July 20, 2001—five days before Rampengan received his visa to come to the United States, and more than a month before he left Indonesia. Even so, Rampengan maintained in his oral testimony that he requested the letter after his arrival in the United States.

Judge Bryant did not point to Rampengan's performance on the witness stand as a reason to doubt his testimony, however. Instead, the judge's distrust stemmed from Rampengan's request for the pastor's letter. Judge Bryant seemed to conclude that, to secure asylum, Rampengan requested a letter from his Indonesian pastor attesting only to his Christian faith. To the judge, this narrow request called into question Rampengan's account of the church attack itself.[3] But Judge Bryant's decision never explains how he

---

[3]Judge Bryant put it this way:
The respondents testified that they specifically and purposefully requested from their pastor a letter. It flies in the face of reason that the respondents would have not requested from the respondent in addition to the pastor's attestation to their status as Christians the incidents to which they testified which directly pertained to their church of which the pastor was the pastor and therefore would have knowledge and incidents which may have occurred individually to these two respondents [sic]. Again, this would suggest, if not demonstrate, that the events to which respondents testified did not occur in the manner to which they

arrived at such a confident conclusion regarding the request for the letter. The muddled testimony on the subject is not clear as to the nature of Rampengan's request, or even as to its purpose.[4] Furthermore, Judge Bryant's decision never considers the possibility that the pastor misunderstood or responded improperly to Rampengan's request (a possibility likewise ignored during oral testimony). We offer no opinion as to whether Judge Bryant might have found Rampengan to be untrustworthy on other grounds. We simply conclude that the reasons the judge offered are insufficient to sustain an adverse credibility determination.

With no cogent reason to doubt Rampengan's credibility offered, there is no barrier to finding past persecution on account of religion. Rampengan's description of the church attack and the

---

testified.
(J.A. 34–35.)

[4]Rampengan's questioning by the counsel for the Department of Homeland Security included the following exchange:
Q.   [W]hy did you request that letter?
A.   Letter as recommendation that I am a Christian and I was attending church in Indonesia.
Q.   Why did you need the letter?
A.   I get that letter as recommendation that I am a member of the church in Indonesia.
Q.   So that you could use it here in the United States to get a new church?
A.   I mean it's not for the church in America but for the Government of America.
Q.   Well then why didn't your pastor write a letter saying that they had all the problems that you said in your application and not just simply that you were attending church?
A.   Maybe my pastor didn't know what to put in the letter.
(Supp. J.A. 31–32.)

8

beating he received in 1998 remain uncontradicted in the record. Judge Bryant's objection to the 1998 beating—that Rampengan was not sure why he was attacked—is unavailing.[5] Rampengan need not know to a moral certainty the reason for his persecution; he is required only to establish that he experienced persecution on account of his religion. See 8 C.F.R. § 1208.16(b)(1)(I). Here reasonable and substantial evidence does not support Judge Bryant's determination to the contrary, so the decision must be vacated. See I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481 (1992). Because he has established that he endured past persecution, Rampengan is entitled to a rebuttable presumption that he will face persecution on account of his religion if returned to Indonesia. See 8 C.F.R. § 1208.16(b)(1)(I).


### III.

Rampengan does not explicitly appeal the denial of withholding of removal under the CAT. Instead, he focuses his argument on withholding of removal under 8 U.S.C. § 1231(b)(3) (2000). Nevertheless, his claim that the BIA "erred in holding that the petitioners were not eligible for withholding of removal" (Pet'r Br. 1) is sufficiently broad to warrant consideration under the CAT. See 8 C.F.R. § 1208.16(c). Because we here decide that

---

[5]When asked why he was attacked, Rampengan answered: "I'm not sure why they attack me, but I think because I'm a Christian." (Supp. J.A. 18.)

9

Rampengan has demonstrated past persecution within the meaning of 8 C.F.R. § 1208.16(b)(1)(I), the immigration judge on remand should reconsider his and his family's eligibility for withholding of removal under the CAT.

IV.

Finally, we note that this appeal lists only Rampengan as a petitioner in the caption. Federal Rule of Appellate Procedure 15(a)(2)(A) requires a petition for review of an agency order to name each party seeking review in the caption or body of the petition. Rampengan's wife and two children do not appear in the caption, but they are listed on Rampengan's application for asylum. In their briefs, both parties repeatedly refer to "petitioners" and clearly contemplate the claims of all four applicants rising and falling as one. Judge Bryant treated the family as one applicant in the administrative proceedings, as did the BIA on appeal. Because the application for asylum and withholding of removal was joint, the claims of Rampengan's wife and children should be treated the same as his on remand, notwithstanding the omission of their names from the petition on appeal. Cf. Miljkovic v. Ashcroft, 366 F.3d 580, 583–84 (7th Cir. 2004).

V.

For the foregoing reasons, we grant the petition for review, vacate the decision of the BIA, and remand the case for further consideration of the evidence in light of Rampengan's presumption of future persecution.

PETITION FOR REVIEW
GRANTED; DECISION
VACATED AND REMANDED
