Peter Anthony SASSO, Plaintiff,

v.

David MILHOLLAN, Director of the Executive Office for Immigration Review; Alan C. Nelson, Commissioner of the Immigration and Naturalization Service; Richard Thornburgh, Attorney General of the United States; Richard B. Smith, Acting Director of the Immigration Service; the Immigration and Naturalization Service; the Executive Office of Immigration Review; and the Department of Justice, Defendants.

No. 90–0761–CIV.

United States District Court, S.D. Florida.

April 19, 1990.

Elena C. Tauler, Miami, Fla., for plaintiff.

Dexter A. Lee, Asst. U.S. Atty., Miami, Fla., for defendants.

## MEMORANDUM OPINION

SCOTT, District Judge.

### I. INTRODUCTION

This Cause is before the Court on Plaintiff Peter Anthony Sasso's Application for Preliminary Injunction.[1] The Plaintiff, a deportable alien presently detained at the Dade County Jail, requests that the Immigration and Naturalization Service be enjoined from conducting his deportation hearing in El Paso, Texas. In support thereof, Plaintiff contends that the proper venue for his deportation hearing is Miami, Florida. The Immigration and Naturaliza-

tion Service contends that the Attorney General has been granted broad discretion to select places of detention for aliens in his custody. It is asserted that included within this discretion is the power to select the forum for deportation hearings. Plaintiff has filed a class action lawsuit challenging the scope of the Attorney General's discretion and has sought injunctive relief against the Immigration and Naturalization Service.

### II. FACTUAL BACKGROUND

Plaintiff, Peter Anthony Sasso ("Sasso"), a native and citizen of Jamaica, was admitted to lawful permanent residence in the United States on May 26, 1980. Since his admission to this country, Sasso has primarily resided with his family in Miami, Florida. After his arrival in the United States, Sasso took advantage of the benefits offered those lawfully residing in this country. In particular, Sasso achieved a college degree and acquired gainful employment.

In 1984, however, Sasso began to run afoul of the law. His legal entanglements since that date have resulted in four separate felony convictions. Because of these convictions, Sasso brings a criminal resume to this Court which includes the following dubious entries:

(1) In May 1984, Sasso was convicted of possession of cocaine in Beaufort, South Carolina. This conviction was pursuant to a plea of guilty.

(2) In February 1989, Sasso was convicted in Beaufort, South Carolina, of being an accessory after the fact, by aiding and abetting a breach of trust. This conviction was pursuant to a plea of nolo contendre.

(3) In June 1989, Sasso was convicted in the United States District Court for the Southern District of Florida of possession of twenty-five pounds of marijuana.

---

**1.** As a procedural backdrop, on March 30, 1990, the Court issued an Order consolidating the Preliminary Injunction hearing with the trial on the merits pursuant to Federal Rule of Civil Procedure 65(a)(2). This final hearing was scheduled for April 2, 1990. However, on that date the government moved to sever the Preliminary Injunction hearing from the trial on the merits. This motion was granted. Thereafter, the Court conducted a full evidentiary hearing on Plaintiff's Application for Preliminary Injunction.

This conviction was pursuant to a plea of guilty.

(4) In July 1989, Sasso was convicted in Dade County, Florida of possession of cocaine and cannabis. This conviction was pursuant to a plea of nolo contendre. Based upon the foregoing convictions, Sasso was classified by the Immigration and Naturalization Service (INS) as an "alien felon" and became subject to the deportation laws of the United States. In particular, Sasso was deemed deportable pursuant to 8 U.S.C. § 1251(a)(4)(B) and 8 U.S.C. § 1251(a)(11).[2] As a result, on March 12, 1990, Sasso was arrested by the United States Border Patrol. Following his arrest, Sasso was transported to the Dade County Jail for temporary detainment.[3]

On March 23, 1990, eleven days after Sasso's arrest, the INS announced its decision to transfer him from the Dade County Jail to its detention facility in El Paso, Texas. Shortly thereafter, the instant lawsuit was filed and the proposed transfer was delayed pending resolution of this matter.[4]

In his Application for Preliminary Injunction, Sasso contends that his proposed transfer to El Paso, for the purpose of conducting a deportation hearing is violative of both constitutional and statutory guarantees. Sasso, first contends that the transfer would violate his right to counsel under 8 U.S.C. § 1362 (1989)[5]. Second, Sasso contends that the transfer would prevent him from availing himself of the testimony of various friends and family members who are unable to afford the expense of travelling to El Paso. Next, Sasso contends that he was not afforded adequate notice regarding the proposed transfer. Finally, Sasso contends that the venue of this action has been established in Miami, Florida due to the application for bond previously filed in this jurisdiction. On the strength of these contentions, Sasso seeks to enjoin the INS from transferring him to El Paso, for the purpose of conducting his deportation hearing.[6]

## III. LEGAL ANALYSIS

At the outset the Court notes that a preliminary injunction is an extraordinary remedy. It is not to be granted routinely but only when the movant, by a clear showing, carries the burden of persuasion. *United States v. Lambert*, 695 F.2d 536 (11th Cir.1983); *Canal Authority Of State Of Florida v. Callaway*, 489 F.2d 567 (5th Cir.1974). In order to obtain a preliminary

---

2. These statutory provisions provide, in pertinent part, as follows:

   *8 U.S.C. § 1251(a)(4)(B):* Any alien in the United States shall, upon the order of the Attorney General, be deported who....

   (4)(B) is convicted of an *aggravated felony* at any time after entry. (emphasis supplied). An *aggravated felony* is defined in 8 U.S.C. 1101(a)(43) as: murder, any drug trafficking crime as defined in section 924(c)(2) of Title 18, United States Code, or any illicit trafficking in any firearms or destructive devices as defined in section 921 of such Title, or any attempt or conspiracy to commit any such act, committed within the United States.

   *8 U.S.C. § 1251(a)(11):* Any alien in the United States shall, upon the order of the Attorney General, be deported who....

   (11) is, or hereafter at any time after entry has been, convicted of a violation of, or a conspiracy to violate any law or regulation of a state, the United States, or a foreign country relating to a controlled substance.

3. At the hearing on the preliminary injunction, the Court took judicial notice that the Dade County Jail is intended for short time confinement.

4. The government agreed to delay Sasso's transfer until this legal issue was resolved.

5. This statutory provision reads as follows:

   "In any exclusion or deportation proceedings before a special inquiry officer and in any appeal proceedings before the Attorney General from any such exclusion or deportation proceedings, the person concerned shall have the privilege of being represented (at no expense to the Government) by such counsel, authorized to practice in such proceedings, as he shall choose."

6. At this point, a general description of the I.N.S. procedure for transferring alien felons will be helpful. It is the general practice of the I.N.S. to transfer alien felons being detained in Miami, Florida, to either Oakdale, Louisiana, Laredo, Texas, or El Paso, Texas. Such movements occur three to four times each month. During each movement, 35 to 40 aliens are transferred. Such movements are generally at a cost to the I.N.S. of $15,000 to $20,000.

injunction, the following prerequisites must be established: (1) A substantial likelihood that plaintiff will prevail on the merits; (2) A substantial threat that the plaintiff will suffer irreparable injury if the injunction is not granted; (3) The threatened injury to plaintiff outweighs the threatened harm an injunction may cause defendant; and (4) That granting the injunction will not disserve the public interest. *Northeastern Florida Chapter of The Association of General Contractors of America v. City of Jacksonville,* 896 F.2d 1283 (11th Cir. 1990); *Tally–Ho, Inc. v. Coast Community College Dist.,* 889 F.2d 1018 (11th Cir. 1989); *Allison v. Froehlke,* 470 F.2d 1123 (5th Cir.1972); *United States v. Lambert,* 695 F.2d at 539. A preliminary injunction will not issue if the movant fails to carry his burden of persuasion as to any one of these prerequisites. *Movie & Video World v. Board of County Com'rs,* 723 F.Supp. 695 (S.D.Fla.1989); *Cone Corp. v. Hillsborough County,* 723 F.Supp. 669 (M.D.Fla. 1989); *Southern Monorail Co. v. Robbins & Myers, Inc.,* 666 F.2d 185 (5th Cir.1982).

Following a full evidentiary hearing, the Court finds that Sasso has failed to establish the prerequisites required for the issuance of a preliminary injunction. However, due to the serious nature of this action as well as the potential ramifications of this decision, the Court will separately analyze each of the prerequisites.

### (1) LIKELIHOOD OF SUCCESS ON THE MERITS

■ As previously mentioned, Sasso contends that the impending transfer violates his statutory and constitutional rights. Congress, however, has squarely placed the responsibility of determining where aliens are to be detained within the sound discretion of the Attorney General. In this regard, 8 U.S.C. § 1252(c) provides in part as follows:

"The Attorney General is authorized and directed to arrange for appropriate places of detention for those aliens whom he shall take into custody and detain under this section."

8 U.S.C. § 1252(c); *See also, Rios–Berrios v. I.N.S.,* 776 F.2d 859, 863 (9th Cir.1985) (It is well-settled that transferring an alien from one locale to another is within the province of the Attorney General); *Ledesma–Valdes v. Sava,* 604 F.Supp. 675 (S.D. N.Y.1985). Contrary to Sasso's contention, this Court concludes that the Attorney General's discretion applies both before and after the order of deportation has been issued. *See, Committee of Central American Refugees v. I.N.S.,* 795 F.2d 1434 (9th Cir.1986), *as amended* 807 F.2d 769 (9th Cir.1986); *Committee of Central American Refugees v. I.N.S.,* 682 F.Supp. 1055 (N.D. Cal.1988); *Rios–Berrios v. I.N.S.,* 776 F.2d at 859. Having made this determination, the Court must next determine whether the Attorney General has applied his discretion in an appropriate fashion.

■ It is alleged that the Attorney General has abused his discretion by ordering that Sasso be transferred to El Paso, when there exists an INS detention facility in Miami, Florida. This facility is the Krome Processing Center ("Krome"). However, given Sasso's status as an alien felon, this argument is without merit.

In 1987, due to the history of disturbances occurring among the detainees housed at Krome, Congress passed Public Law No. 100–202, 101 Stat. 1329 (1987). In effect, this legislation required that the funding for Krome be withdrawn if alien felons continued to be detained at this facility after February 27, 1988. In response to this legislation, the I.N.S. ordered officials at Krome to remove all alien felons from this facility. These orders were promptly complied with by local officials.[7] Given the history of this legislation together with the broad grant of discretion afforded the Attorney General pursuant to 8 U.S.C. 1252(c), this Court concludes that Sasso has not carried his burden of establishing a

---

7. Despite the subsequent lapse of this legislation, it has been the consistent practice of the I.N.S. not to house alien felons at Krome. It is also consistent with the clear intent of Congress, notwithstanding the lapse in the statute.

likelihood of success on the merits.[8]

### (2) FAILURE TO ESTABLISH IRREPARABLE INJURY

■ Sasso claims that he will suffer an irreparable injury if his deportation hearing is conducted in El Paso. In support thereof, Sasso claims that his attorneys will not be able to travel to El Paso, thereby abrogating his right to counsel. This argument must fail. The Attorney General is not obligated to detain aliens where their ability to obtain representation is at its greatest. *Committee of Central American Refugees v. I.N.S.*, 795 F.2d at 1437. Rather in determining where to detain aliens, the Attorney General need only apply his discretion in an appropriate manner.

Sasso, as an alien felon, is entitled to the same rights and benefits under the Immigration and Nationality Act in El Paso that he would be in any other INS detention facility in the United States. In fact, given its large population, its existence as a major port of entry for aliens, and its close proximity to the Mexican border, El Paso will certainly provide Sasso an ample opportunity to retain counsel for his deportation hearing.

In addition, Sasso contends that the impending transfer deprives him of the right to have witnesses testify on his behalf. This argument is also without merit. The INS affords detainees the right to present witnesses at their deportation hearings, but it does not afford detainees the means for getting these witnesses to the hearings. Sasso will be afforded the same opportunity to present witnesses in El Paso as he would in Miami. The fact that testifying in El Paso may be less convenient for Sasso's witnesses does not rise to the level of irreparable injury. Accordingly, Sasso has failed at his attempt to persuade this Court that he will suffer irreparable harm if he transferred to El Paso.

### (3) & (4) A PRELIMINARY INJUNCTION WOULD DISSERVE THE PUBLIC INTEREST AND SUBSTANTIALLY HARM THE GOVERNMENT

■ The Court further concludes that granting Sasso's application for preliminary injunction would disserve the public interest and substantially harm the United States Government. As previously stated, a deportation hearing in El Paso will accord Sasso all of the rights and privileges guaranteed under the Immigration and Naturalization Act. As a result, the Court perceives no significant harm to Sasso, due to the contemplated transfer to El Paso.

On the other hand, an adverse ruling to the Government would negatively impact the public interest. Among the deleterious ramifications are: (1) It would jeopardize the orderly and efficient administration of this country's immigration laws; (2) It would require the Court to severely restrict the discretion of the Attorney General; and (3) It would require this Court to ignore specific Congressional enactments concerning the detainment of alien felons. This Court declines to do so. Instead, we choose to leave such discretionary decisions to the governmental agencies best suited, the INS and the Attorney General's Office.

### IV. CONCLUSION

Based on the foregoing analysis and the authorities cited therein, it is accordingly ORDERED and ADJUDGED that Sasso's Application for a Preliminary Injunction is DENIED.

---

8. The Court specifically notes that Sasso has not shown a likelihood of success on the merits as to the issues relating to venue and notice. These issues can be summarily disposed of by noting that Sasso alleges that venue has been established in Miami, pursuant 8 C.F.R. 3.18(c)(1). The Court cannot agree. At the present time, venue for Sasso's deportation hearing has not been established. Because of this, the notice provisions which correspond to transferring venue are not applicable.