Meldrina SKELLY, Petitioner,

v.

IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.

Docket No. 97–4121.

United States Court of Appeals,
Second Circuit.

Argued Dec. 7, 1998.

Decided Feb. 22, 1999.

STRAUB, Circuit Judge:

Petitioner Meldrina Skelly seeks review of an order of the Board of Immigration Appeals ("BIA"), which dismissed her appeal of an order of an Immigration Judge (Margaret McManus, *Immigration Judge*) denying Skelly's request to file an application for suspension of deportation and ordering that she be excluded from the United States. The only question presented by her petition concerns the constitutionality of the provision on which she relied in seeking a suspension of deportation in her exclusion proceeding— former § 244(a)(1) of the Immigration and Nationality Act of 1952, § U.S.C. § 1254(a)(1) (1994) (repealed 1996) ("former § 244(a)(1)"). We recently concluded that former § 244(a)(1) permits aliens to seek suspensions of deportation only in deportation proceedings, not in exclusion proceedings. *See Patel v. McElroy*, 143 F.3d 56 (2d Cir.1998). We now reject Skelly's equal protection challenge to the statute, holding that former § 244(a)(1)'s differing treatment of aliens in deportation proceedings and aliens in exclusion proceedings does not offend equal protection principles. Because of our holding on the statute's constitutionality, Skelly's petition is controlled by *Patel*, which does not permit her to seek a suspension of deportation. Accordingly her petition is denied.

## BACKGROUND

Skelly first entered the United States from her native St. Lucia in 1987 on a nonimmigrant visitor's visa. Overstaying her visa, she appears to have lived illegally in the United States continuously until August of 1994. She has two daughters—both U.S. citizens—and a husband, all of whom live in Brooklyn, New York.

Skelly returned to St. Lucia on or about August 9, 1994, and then attempted to reenter the United States on August 29, 1994, without any documentation authorizing her admission. The Immigration and Naturalization Service stopped her as she attempted to enter the country and commenced exclusion proceedings because she lacked either a valid visa or an exemption from the visa requirement.

Kerry E. Ford, Coudert Brothers, New York, N.Y. (Douglas F. Broder, Coudert Brothers, New York, NY, of counsel), for Petitioner.

Diogenes P. Kekatos, Assistant United States Attorney for the Southern District of New York (Mary Jo White, United States Attorney, James A. O'Brien III, Special Assistant United States Attorney, Steven M. Haber, Assistant United States Attorney, of counsel), for Respondent.

Before: KEARSE, CARDAMONE, and STRAUB, Circuit Judges.

At her exclusion hearing before an Immigration Judge, Skelly admitted that she was excludable but requested a suspension of deportation under former § 244(a)(1), which would have permitted the Justice Department to adjust her status to that of a lawful permanent resident. The Immigration Judge denied the request and ordered Skelly excluded and deported. Skelly then appealed to the BIA, which denied Skelly oral argument and dismissed her appeal. Reaching their decisions before we issued our opinion in *Patel*, both the Immigration Judge and the BIA relied on *In re Torres*, 19 I. & N. Dec. 371 (BIA 1986), an earlier BIA case also interpreting former § 244(a)(1) to apply only in deportation cases. Neither tribunal explicitly addressed Skelly's equal protection argument.

## DISCUSSION

### I. *Statutory Scheme*

Generally "any immigrant at the time of application for admission [to the United States] who is not in possession of a valid unexpired immigrant visa, reentry permit" or other suitable travel document is excludable. 8 U.S.C. § 1182(a)(7)(A)(i)(I) (1994).

Until its repeal in 1996, a separate provision, former § 244(a)(1), provided in relevant part that

the Attorney General may, in his discretion, suspend *deportation* and adjust the status to that of an alien lawfully admitted for permanent residence, in the case of an alien ... who applies to the Attorney General for suspension of *deportation* ... and is *deportable* under any law of the United States ...; has been physically present in the United States for a continuous period of not less than seven years immediately preceding the date of such application, and proves that during all of such period he was and is a person of good moral character; and is a person whose *deportation* would, in the opinion of the Attorney General, result in extreme hardship to the

alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

8 U.S.C. § 1254(a)(1) (1994) (repealed September 30, 1996) (emphasis added). *Patel* held as a matter of statutory construction that the suspensions of deportation discussed in former § 244(a)(1) are available only to those aliens who are being *deported* and not to those who are merely being *excluded* from admission to the United States—as is Skelly.[1] 143 F.3d at 57, 59–61.

In the Illegal Immigration Reform and Immigration Responsibility Act of 1996, Pub.L. No. 104–208, 110 Stat. 3009–594 ("IIRIRA"), Congress repealed former § 244(a)(1), replacing it with a similar provision permitting the Attorney General to exercise her discretion to grant lawful permanent resident status to aliens scheduled to be returned to their native countries. *See* 8 U.S.C.A. § 1229b(b)(1) (West 1998). The new section differs from former § 244(a)(1) in two ways: (1) it does away with the distinction between exclusion and deportation proceedings, and (2) it increases the requirement of continuous presence in the United States to ten years. *See id.* The new provision, however, applies only in proceedings commenced after April 1, 1997; for proceedings—like Skelly's—commenced before that date, the earlier version remains in effect. *See* IIRIRA §§ 309(a) & (c), 110 Stat. at 3009–625; *Patel*, 143 F.3d at 57, 60–61.

### II. *Skelly's Constitutional Claim*

■ Skelly does not contest that she is excludable under the statute and concedes that *Patel* precludes her from arguing that former § 244(a)(1) permits a suspension of deportation in her case. Thus, the only question before us is whether former § 244(a)(1) is an unconstitutional violation of Skelly's equal protection rights because of its differing treatment of aliens in exclusion and deportation proceedings. As we explain be-

---

1. "The deportation hearing is the usual means of proceeding against an alien already physically in the United States, and the exclusion hearing is the usual means of proceeding against an alien outside the United States seeking admission."

*Landon v. Plasencia*, 459 U.S. 21, 25, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982). As explained further below, aliens generally enjoy greater procedural and substantive rights in deportation proceedings. *See id.* at 26–27, 103 S.Ct. 321.

low, we hold that former § 244(a)(1) does not violate equal protection principles.

At the outset, we note that there is a well-established equal protection component to the Fifth Amendment Due Process Clause applicable to the federal government. *See Bolling v. Sharpe,* 347 U.S. 497, 499, 74 S.Ct. 693, 98 L.Ed. 884 (1954); *Furlong v. Shalala,* 156 F.3d 384, 392 (2d Cir.1998). Accordingly, even though the Fifth Amendment itself—unlike the Fourteenth—does not contain any specific equal protection language, the INS and the statutory authority under which the INS acts must still comport with equal protection principles.

For purposes of this appeal, we assume without deciding that Skelly enjoys the same equal protection rights afforded to continuous residents under the Constitution. Although aliens at the border are generally accorded few constitutional rights, "once an alien gains admission to our country and begins to develop the ties that go with permanent residence, his constitutional status changes accordingly." *Landon v. Plasencia,* 459 U.S. 21, 32, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982). In this respect, "a continuously present resident alien is entitled to a fair hearing when threatened with deportation," *id.,* regardless of whether that alien is present illegally, *see, e.g., Leng May Ma v. Barber,* 357 U.S. 185, 187, 78 S.Ct. 1072, 2 L.Ed.2d 1246 (1958); *Augustin v. Sava,* 735 F.2d 32, 36 (2d Cir.1984). Likewise, a continuously present alien is entitled to equal protection of the laws, *see Yick Wo v. Hopkins,* 118 U.S. 356, 369, 6 S.Ct. 1064, 30 L.Ed. 220 (1886); *Francis v. INS,* 532 F.2d 268, 272 (2d Cir. 1976), even if the entry was unlawful, *see Plyler v. Doe,* 457 U.S. 202, 211–17, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982). Skelly's case, however, presents a more knotty question that we need not decide to resolve this appeal: whether Skelly had effectively severed her connection to the United States and therefore her status as a continuous resident by returning to St. Lucia for twenty days. *Compare Shaughnessy v. United States ex rel. Mezei,* 345 U.S. 206, 214, 73 S.Ct. 625, 97 L.Ed. 956 (1953) (absence of approximately nineteen months effected "clear break in an alien's continuous residence" in United States), *with Plasencia,* 459 U.S. at 34, 103 S.Ct. 321 (determining that *Mezei* does not govern a case in which a permanent resident was absent from the United States for only "a few days").

Assuming without deciding that Skelly is entitled to the constitutional protections afforded continuous residents, former § 244(a)(1) satisfies equal protection scrutiny. As an initial matter, Congress deserves special deference in the area of immigration and naturalization. *See Fiallo v. Bell,* 430 U.S. 787, 792, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977); *Giusto v. INS,* 9 F.3d 8, 9 (2d Cir. 1993) (per curiam). Specifically, Congress's classifications should survive an equal protection challenge so long as there is a " 'facially legitimate and bona fide reason' " for the classification. *Fiallo,* 430 U.S. at 794, 97 S.Ct. 1473 (quoting *Kleindienst v. Mandel,* 408 U.S. 753, 770, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972)); *accord Giusto,* 9 F.3d at 9–10. "Thus, a legislative scheme for deporting certain aliens but not others will ' "not be set aside as the denial of equal protection of the laws if any state of facts reasonably may be conceived to justify it." ' " *Giusto,* 9 F.3d at 10 (quoting *Linnas v. INS,* 790 F.2d 1024, 1032 (2d Cir.) (in turn quoting *Metropolitan Casualty Ins. Co. v. Brownell,* 294 U.S. 580, 584, 55 S.Ct. 538, 79 L.Ed. 1070 (1935)), *cert. denied,* 479 U.S. 995, 107 S.Ct. 600, 93 L.Ed.2d 600 (1986)).

It is not difficult to conceive of legitimate and bona fide reasons why former § 244(a)(1) might provide differing available procedures to aliens in exclusion proceedings and aliens in deportation proceedings. Specifically, the distinction made by former § 244(a)(1) appears simply to be a permissible legislative generalization born of the legitimate aim of saving resources. That is, Congress evidently made the logical determination that, as a class, aliens in deportation proceedings—i.e., aliens who have already entered the country—are more likely than aliens in exclusion proceedings—i.e., aliens who are detained while entering the country—to present the circumstances under which the Attorney General may exercise her discretion to suspend deportation. *Cf. Plasencia,* 459 U.S. at 31, 103 S.Ct. 321 (holding that there is no

"right to identical treatment" for a resident alien returning from a trip abroad and a continuously present alien). Congress appears to have used that determination to limit the cases the Attorney General may consider, thereby limiting the resources expended in the consideration of applications for suspensions of deportation. *Cf. Fiallo,* 430 U.S. at 795 n. 6, 97 S.Ct. 1473 ("In the inevitable process of 'line drawing,' Congress has determined that certain classes of aliens are more likely than others to satisfy national objectives without undue cost, and it has granted preferential status only to those classes.").

Even though the generalization may not apply in Skelly's exact case and even though there may be more precise generalizations Congress could have chosen, those circumstances alone do not suggest an equal protection violation in this case. Just as a particularly mature fourteen-year-old could not argue successfully that a state's minimum driving age violates the equal protection clause, so is Skelly precluded from making a similar argument about former § 244(a)(1).

Moreover, Congress's repeal of former § 244(a)(1) to provide equal treatment for aliens in deportation and exclusion proceedings does not indicate that Congress thought the earlier law was arbitrary and irrational and hence unconstitutional. In the absence of explicit evidence that Congress made such a determination, such an assumption would be entirely inappropriate, especially given the forty year history of the earlier provision, Congress's willingness to leave the earlier provision in force for 180 days following the amendment, and the "well-recognized" distinction between exclusion and deportation "both in the [statute] and in the case law." *Patel,* 143 F.3d at 60.

Finally, our decision in *Francis v. INS,* 532 F.2d 268 (2d Cir.1976), does not require a different result. *Francis* overturned a statutory scheme that permitted a waiver of deportation for lawful permanent residents in exclusion proceedings but did not permit a waiver for precisely the same aliens in deportation proceedings. *See* 532 F.2d at 269. The law at issue in *Francis* applied differing treatment to aliens in a completely different way from former § 244(a)(1). Where former § 244(a)(1) treats aliens more harshly in exclusion proceedings than in deportation proceedings, the law in *Francis* did precisely the opposite: It treated aliens in deportation hearings more harshly than aliens in exclusion hearings. While it is easy—as explained above—to justify the former, we were unable in *Francis* to conceive of a plausible justification for the latter. *See id.* at 273.

### CONCLUSION

For the foregoing reasons, we deny Skelly's petition for review, leaving intact the Immigration Judge's order denying Skelly's request to file a suspension of deportation and ordering that she be excluded from the United States.