Eduard **AVRAMENKOV**

v.

**IMMIGRATION & NATURALIZATION SERVICE, et al.**

**No. 3:00CV779 AHN.**

United States District Court,
D. Connecticut.

May 18, 2000.

## RULING ON PETITION FOR WRIT OF HABEAS CORPUS

NEVAS, District Judge.

The petitioner, Eduard Avramenkov ("Petitioner"), brings this complaint for declaratory relief alleging violations of the Fifth, Eighth and Fourteenth Amendments. The Petitioner requests the court to issue a writ of habeas corpus ordering his immediate release from the mandatory and indefinite detention by the Immigration and Naturalization Service ("Respondents"). He also seeks an injunction preventing the Respondents from transferring him from Connecticut to Louisiana.

### BACKGROUND

On April 24, 1996, Congress enacted the Anti–Terrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (1996) ("AEDPA") (effective date April 24, 1996). Later that year, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104–208, Div. C, 110 Stat. 3009 (1996) ("IIRIRA") (transitional rules effective date October 30, 1996 and permanent rules effective date April 1, 1997). As discussed below, these acts made significant changes in the Immigration and Naturalization Act, 8 U.S.C. §§ 1101–1537 ("INA"), which affect, *inter alia,* (1) the jurisdiction of federal courts to review immigration decisions and (2) the relief available to aliens involved in deportation proceedings.

### FACTS

The Petitioner, a native and citizen of the Ukraine, was admitted to the United States as a lawful permanent resident ("LPR") in 1995. Subsequently, he was convicted of second degree robbery on October 17, 1997, for criminal conduct that occurred on October 31, 1996. As a consequence, in November, 1999, the INS issued a notice to appear to the Petitioner. Thereafter, the Petitioner's request for bond was denied pursuant to § 236(c) of

James McKeon, New Haven, CT, for plaintiff.

James K. Filan, Office of U.S. Attorney, New Haven, CT, for defendant.

the INA, codified as 8 U.S.C. § 1226(c), which requires the INS to detain aliens who are convicted of an aggravated felony. He filed the current petition for a writ of habeas corpus on May 1, 2000.

## DISCUSSION

The INA provides that any alien who has been convicted of one of several various offenses, including an aggravated felony or a controlled substance violation, is subject to deportation. *See* 8 U.S.C. §§ 1227(a)(2)(A)–(E) (West 1999). Prior to the 1996 amendments to the INA, an alien who faced deportation due to a criminal conviction could request discretionary relief from deportation pursuant to the Immigration and Naturalization Act, INA § 212(c), as amended by AEDPA. *See* 8 U.S.C.A. § 1182(c) (West 1995) (repealed). If the request was denied, an alien could seek review in the courts of appeals, *see* 8 U.S.C. § 1105(a) (West 1995) (repealed), or petition for a writ of habeas corpus pursuant to either the INA, *see* 8 U.S.C. § 1105a(a)(10) (West 1995) (repealed), or the general habeas statute, *see* 28 U.S.C. § 2241 (1999).

With the enactment of the AEDPA in April, 1996, discretionary relief from deportation was eliminated for persons who committed certain enumerated criminal offenses, including aggravated felonies, and crimes involving "moral turpitude" or controlled substances. *See* AEDPA § 440(d). When Congress passed the IIRIRA in September, 1996, § 212(c) discretionary

relief from deportation was totally eliminated. In its place, Congress provided a new type of relief, which is designated as "cancellation of removal." *See* IIRIRA § 304(b); *see also* 8 U.S.C. § 1229(b).[1] Cancellation of removal relief is not available to any alien who has been convicted of an aggravated felony. *See* 8 U.S.C. § 1229b(a)(3).

In addition, after these amendments, § 236(c) of the INA requires mandatory detention of certain aliens upon their release from incarceration. In pertinent part, the statute provides:

(c) Detention of Criminal Aliens.

(1) Custody. The Attorney General shall take into custody any alien who—

(b) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(iii) of this title when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

8 U.S.C. S 1226(c)(1)(B). The statute provides only limited circumstances when an alien subject to mandatory detention may be released.[2] Because the Petitioner does not fall within the limited release provision of section 1226(c)(2), he is being detained without bond pursuant to § 236(c).

In this action, the Petitioner seeks an injunction preventing the Respondents

---

1. IIRIRA contains two different sets of rules. First, there are the "transitional rules" which apply to persons whose removal proceedings were commenced before April 1, 1997, and against whom a final deportation order issued after October 30, 1996. *See* IIRIRA §§ 309(c), as amended by the Act of Oct. 11, 1997, § 2, Pub.L. No. 104–302, 110 Stat. 3656, 3657. Second, there are the "permanent rules" which apply to persons whose removal proceedings commenced after April 1, 1997. *See id.* The permanent rules apply in this case because the petitioner's removal proceedings commenced after April 1, 1997.

2. Specifically, "[t]he Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of Title 18, that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding." *See* 8 U.S.C. S 1226(c)(2).

from transferring him to Oakdale, Louisiana. He also submits that the court must grant the writ of habeas corpus because the mandatory detention provisions violate the Fifth, Eighth and Fourteenth Amendments.

### I. Injunction To Prevent Transfer

█ The Respondents assert that the court lacks jurisdiction to prevent the INS from transferring the Petitioner to a federal detention facility in Oakdale, Louisiana. The court agrees.

Congress has squarely placed the responsibility of determining where aliens are to be detained within the sound discretion of the Attorney General. See 8 U.S.C. § 1231(g)(1). Specifically, the Attorney General is mandated to "arrange for appropriate places of detention for aliens detained pending removal." Id. The Attorney General's discretionary power to transfer aliens from one locale to another, as she deems appropriate, arises from this statutory language. See Van Dinh v. Reno, 197 F.3d 427, 433 (10th Cir.1999); Rios–Berrios v. INS, 776 F.2d 859, 863 (9th Cir.1985) (interpreting former statute now codified as § 1231(g)); Sasso v. Milhollan, 735 F.Supp. 1045, 1048 (S.D.Fla. 1990) (accord); Ledesma–Valdes v. Sava, 604 F.Supp. 675 (S.D.N.Y.1985) (same).

Specifically, 8 U.S.C. § 1252(a)(2)(B)(ii) provides that no court has jurisdiction to review any decision or action the Attorney General makes "under this subchapter" except for "the granting of relief under section 1158(a)."[3] The subchapter referred to is subchapter II of Chapter 12 of Title 8, which covers §§ 1151–1378, including § 1231. Thus, by enacting AEDPA and IIRIRA, Congress intended to insulate

discretionary decisions of the Attorney General from judicial review. The same conclusion applies to the court's review of the Attorney General's discretionary decisions under the habeas statute, 28 U.S.C. § 2241.

█ The Second Circuit in Henderson v. INS, 157 F.3d 106 (2d Cir.1998), found that Congress intended IIRIRA to make "the law now ... much like it was prior to enactment of the INA," when deportation orders were "nonreviewable to the fullest extent possible under the Constitution." Id. at 119. On this view, if the Constitution has historically required habeas review of discretionary decisions by executive agencies, the court retains jurisdiction to review such claims under § 2241 now.[4] If, however, review of discretionary decisions has not historically been guaranteed, Congress can, and did, with the passage of AEDPA and IIRIRA, remove such claims from review under § 2241.

It is well-established that the Constitution has not historically authorized judicial review of merely discretionary decisions made by executive agencies. See Goncalves v. Reno, 144 F.3d 110, 125 (1st Cir.1998) (explaining differences between decisions by the Attorney General that are interpretive which are subject to review and those that are discretionary which are not); Yang v. INS, 109 F.3d 1185, 1195 (7th Cir.1997) (collecting cases). As such, while federal courts retain the power to review constitutional challenges to the Attorney General's "interpretation" of the immigration laws, it does not include challenges to the discretionary decisions of the Attorney General. See Henderson, 157 F.3d at 120 nn. 10–12. Consequently, the

---

**3.** Section 1158(a) deals with requests by aliens for political asylum.

**4.** This framing of the issue is consistent with the Second Circuit's holding in Henderson. In Henderson, the Second Circuit held "that the federal courts have jurisdiction under § 2241 to grant writs of habeas corpus when those aliens are in custody in violation of the Constitution or laws or treaties of the United

States" because Congress did not expressly eliminate habeas review. Henderson, 157 F.3d at 122 (quotation marks and citation omitted). The court also stated that not every statutory claim is cognizable on habeas, but those affecting substantial rights of aliens of the sort courts have traditionally enforced are. See id.

court has no jurisdiction to review the Attorney General's decision to transfer an alien from one locale to another to commence removal proceedings. *See Chavez v. INS*, 55 F.Supp.2d 555, 557 (W.D.La. 1999) (explaining that discretionary decisions made by the Attorney General are nonreviewable under § 1252(a)(2)(B)(ii)).

Moreover, although 8 U.S.C. § 1252 is entitled "Judicial review of orders of removal," it is not limited to final orders of deportation. *See Van Dinh v. Reno*, 197 F.3d 427, 431–32 (10th Cir.1999). Specifically, the Tenth Circuit held that, because § 1252 was both complicated and prolific, it addresses a multitude of jurisdictional issues, including ones that are collateral to the review of a final order of deportation. *See Brotherhood of R.R. v. Baltimore & O.R. Co.*, 331 U.S. 519, 528–29, 67 S.Ct. 1387, 91 L.Ed. 1646 (1947) (explaining that the heading of a statute cannot limit the plain meaning of its text). Accordingly, § 1252 is not limited in application only to final orders of removal.

In addition, even if the court had jurisdiction to prevent the Attorney General from transferring the Petitioner to Louisiana, he has failed to show that such a transfer would violate his rights.

Notably, no decisions have authorized injunctive relief barring the Attorney General from exercising her discretion to determine the place of detention of aliens in the absence of proof of actual interference with an existing attorney-client relationship or a showing that an alien's constitutional rights have been interfered with. *See Gandarillas–Zambrana v. Bd. of Immigration App.*, 44 F.3d 1251, 1256 (4th Cir.1995); *Committee of Central Am. Refugees v. INS*, 795 F.2d 1434, 1437–38 (9th Cir.1986); *Dai v. Caplinger*, 1995 WL 241861 (E.D.La. Apr.25, 1995). In the instant action, the Petitioner has not met his burden of showing either.

It is well-established that "a transfer, standing alone, does not constitute a violation of plaintiffs' due process or statutory rights justifying the issuance of injunctive relief to restrict the Attorney General's discretion under [§ 1231(g)(1) ]." *Committee of Central Am. Refugees*, 682 F.Supp. at 1064–65. Moreover, the Attorney General is not obligated to detain aliens where their ability to obtain representation and to present witnesses is at its greatest. *See Sasso*, 735 F.Supp. at 1049. The INA gives the Petitioner the same rights and privileges at a removal proceeding in Louisiana as he would have in Connecticut. *See id.* Accordingly, the transfer itself is insufficient to prevent the injunctive relief requested by the Petitioner.

In addition, the Petitioner's contention that the impending transfer interferes with his existing attorney-client relationship and deprives him of the right to present witnesses and evidence is without merit. He has failed to provide evidence that he has an on-going relationship with his attorney or that a transfer to Louisiana would effectively destroy that relationship.

The Petitioner has also failed to show how the impending transfer to Louisiana will deprive him of the right to present witnesses and evidence. The INS affords detainees the right to present witnesses and evidence at their removal proceedings, but it does not afford detainees the means for getting those witnesses or evidence to the hearings. The fact that Louisiana may be inconvenient for the Petitioner's witnesses is insufficient to establish the prejudice required to prevent a transfer. *See Gandarillas–Zambrana*, 44 F.3d at 1256–57; *Sasso*, 735 F.Supp. at 1048–49.

Furthermore, the Petitioner has failed to specify what additional evidence or witnesses he would be able to present if the hearing takes place in Connecticut. Conversely, he has not provided the court with any documentation of how he will be limited in his ability to present evidence in Louisiana. Nor has the Petitioner explained why affidavits from those witnesses, if any, would be insufficient to the removal proceedings. This lack of specificity is fatal to his claim because the court

does not have an adequate factual basis to determine whether the place of the hearing will violate his right to present evidence and witnesses. *Cf. Maldonado–Perez v. INS,* 865 F.2d 328, 334–36 (D.C.Cir. 1989) (holding that alien must name specific witnesses to prevail on change of venue motion).

## II. *Constitutionality of § 236(c)*

The Petitioner also asserts that § 236(c) of IIRIRA, which requires mandatory detention of a person classified as an aggravated felon, violates his constitutional rights under the Fifth, Eighth and Fourteenth Amendments. The court disagrees.

### A. *Fifth Amendment—Due Process*

The due process clause of the Fifth Amendment provides, "No person shall ... be deprived of life, liberty or property, without due process of law." U.S. Const. amend. V. Due process protection has two components, a substantive due process component and a procedural due process component. *See United States v. Salerno,* 481 U.S. 739, 746, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). The substantive due process component precludes the government from engaging in conduct that "shocks the conscience" or interferes with rights "implicit in the concept of ordered liberty." *Id.* (citations and quotations omitted). The procedural due process component precludes the government from depriving a person of life, liberty, or property in an unfair manner. *See Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Substantive and procedural due process claims must be supported by an underlying liberty interest. Accordingly, any due process analysis must begin with a "careful description of the asserted right." *Reno v. Flores,* 507 U.S. 292, 302, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993).

### 1. *Procedural Due Process*

The Respondents assert that § 236(c) does not violate the Petitioner's procedural due process rights. The court agrees.

When considering a procedural due process claim, the court must apply the factors set forth in *Eldridge.* Those factors are as follows:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Eldridge,* 424 U.S. at 334–35, 96 S.Ct. 893.

In the instant action, the Petitioner has failed to show that his procedural due process rights have been violated. His reliance on those cases striking down § 236(c) as unconstitutional is misplaced. *See, e.g., Zgombic v. Farquharson,* 89 F.Supp.2d 220 (D.Conn.2000) (Underhill, J.). Those cases involved petitioners whose criminal conduct predated the AEDPA and IIRIRA amendments, which limited and then repealed § 212 discretionary relief from deportation. *See Rogowski v. Reno,* 94 F.Supp.2d 177 (D.Conn.1999) (finding § 236(c) unconstitutional but dealing with pre-AEDPA criminal conduct); *Bouayad v. Holmes,* 74 F.Supp.2d 471 (E.D.Pa.1999) (holding mandatory detention provisions unconstitutional in case involving pre-AEDPA criminal conduct); *Danh v. Demore,* 59 F.Supp.2d 994, 1001–04 (N.D.Cal. 1999) (holding the same); *Van Eeton v. Beebe,* 49 F.Supp.2d 1186, 1190 (D.Or.1999) (holding the same); *Martinez v. Greene,* 28 F.Supp.2d 1275, 1282–84 (D.Colo.1998) (holding the same). As such, these courts found it important that the petitioners had § 212(c) relief still available. Consequently, because there was a strong likelihood that the petitioners might be entitled to remain in the country under § 212(c), a significant liberty interest was implicated

by mandatory detention pursuant to § 236(c).

This case, however, is more akin to those upholding the constitutionality of § 236(c). *See Parra v. Perryman,* 172 F.3d 954 (7th Cir.1999) (holding mandatory detention provision constitutional because petitioner's legal right to remain in the United States ended once he conceded that he was an aggravated felon and thus any liberty interest he may have previously held was minimal); *see also Reyes v. Underdown,* 73 F.Supp.2d 653 (W.D.La.1999) (holding mandatory detention provisions constitutional); *Diaz–Zaldierna v. Fasano,* 43 F.Supp.2d 1114, 1118–21 (S.D.Cal. 1999) (holding the same); *Galvez v. Lewis,* 56 F.Supp.2d 637, 646–49 (E.D.Va.1999) (*holding the same*).

■ Moreover, in this case, AEDPA § 440(d) bars the Petitioner from receiving former § 212(c) relief from deportation.[5] Therefore, because the Petitioner is almost

certainly going to be removed from the country, no significant liberty interest is implicated by § 236(c).[6] In addition, the risk of erroneous deprivation is slight in light of the Petitioner's aggravated felony conviction and the fact that he does not dispute this conviction. Consequently, additional procedural safeguards would be of little value to a criminal alien, such as the Petitioner here, whose removal from the country is a virtual certainty.

The Respondents' interest, on the other hand, are substantial. In addition to the administrative burden of conducting individualized bond hearings for all detained aliens, Congress has determined that a certain class of aliens present a significant risk of flight and/or a threat to the safety of the community. As a consequence, there is no procedural due process violation because the Petitioner's liberty interest, if any at all, is substantially outweighed by any risk of erroneous de-

---

**5.** Even if § 212(c) was not abolished, the petitioner would not be eligible for relief under that statute. Prior to the enactment of AEDPA, an alien seeking such relief was required to show that he had a lawful unrelinquished domicile in this country for seven years and that he had not served a term of imprisonment exceeding five years. *See* 8 U.S.C. § 1182(c) (1994). In this case, he is considered an LPR starting on November 5, 1993. Consequently, the Petitioner has not had a lawful, unrelinquished domicile for seven years.

**6.** The Petitioner asserts that he intends to seek discretionary relief from removal under the INA. While it is not the court's role to determine whether the petitioner has such relief available, it is relevant in determining the extent of the Petitioner's liberty interest in being free on bail pending removal.

The Petitioner contends that he will seek relief under 8 U.S.C. § 1229b(a), which provides for cancellation of removal if certain requirements are met. However, it does not appear that the Petitioner can satisfy the requirements of this statute because it is unavailable to any alien convicted of an aggravated felony. *See* 8 U.S.C. § 1229b(b)(1)(C).

The Petitioner next states that he intends to seek relief under 8 U.S.C. § 1231(b)(3), which provides for withholding of removal if certain conditions are met. Notably,

§ 1231(b)(3)(B)(ii) appears inapplicable to the Petitioner because it provides that the Attorney General, at her discretion, may decline to withhold removal where an alien has been convicted of an aggravated felony and has been sentenced to a term exceeding five years.

Finally, the Petitioner states that he intends to seek relief under 8 U.S.C. § 1158(a)(1), which provides for political asylum in accordance with the statute. However, § 1158(a)(2)(B) requires that an application for asylum be made within one year after the date the alien arrives in the United States. One exception to this time limit is where the alien can demonstrate to the Attorney General that changed circumstances materially affect the alien's application or that extraordinary circumstances caused the delay. *See* 8 U.S.C. § 1158(a)(2)(D). Notably, 8 C.F.R. § 3.2(c)(3)(ii) contemplates changed circumstances which arise in the alien's native country or in the country to which the alien will be removed. It appears unlikely that the Petitioner *will satisfy the requirements of* § 1158(a).

Again, the court notes, however, that the Attorney General, not the court, is charged with the responsibility of implementing these statutes. The court has discussed these statutes only to illustrate that the Petitioner has a limited liberty interest for its constitutional analysis.

privation and the government's interest in enacting § 236(c). *See Eldridge*, 424 U.S. at 334–36, 96 S.Ct. 893.

### 2. *Substantive Due Process*

The petitioner asserts that § 236(c) violates his substantive due process rights. The court disagrees.

Substantive due process prevents the government from engaging in conduct that "shocks the conscience" or interferes with rights "implicit in the concept of ordered liberty." *Salerno*, 481 U.S. at 746, 107 S.Ct. 2095 (quoting *Rochin v. California*, 342 U.S. 165, 172, 72 S.Ct. 205, 96 L.Ed. 183 (1952)), and *Palko v. Connecticut*, 302 U.S. 319, 325–26, 58 S.Ct. 149, 82 L.Ed. 288 (1937). The simplest example of such a right is freedom from bodily restraint. *See Foucha v. Louisiana*, 504 U.S. 71, 80, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992). Once government action infringes upon a "fundamental" right, the court will strike down the offending act or statute unless the infringement is narrowly tailored to serve a compelling governmental interest. *See Flores*, 507 U.S. at 302, 113 S.Ct. 1439. If the right at issue is not "fundamental," however, the court will uphold the act or statute so long as it is rationally related to a legitimate governmental interest. *Washington v. Glucksberg*, 521 U.S. 702, 728, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997).

However, immigration legislation generally will withstand constitutional challenges if it is supported by "a facially legitimate and bona fide reason." *Fiallo v. Bell*, 430 U.S. 787, 794, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977); *see also Salerno*, 481 U.S. at 745–46, 107 S.Ct. 2095. Therefore, Congress's plenary power to enact immigration statutes like § 236(c) is subject to highly deferential review, even when subject to a constitutional challenge. Moreover, it has "long been held that an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative." *Landon v. Plasencia*, 459 U.S. 21, 32, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982). Consequently, the challenged statute must be regulatory, not punitive and if the statute is regulatory, it must not appear excessive in relation to the purpose behind the statute. *See United States v. Salerno*, 481 U.S. 739, 747, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987).

■ Despite the parties dispute over the proper standard of review, the court finds § 236(c) constitutional under either a heightened standard of review or under a more deferential standard of review.

Under the more deferential standard of review enunciated in *Salerno*, the court finds that § 236(c) is regulatory in nature and that it is not excessive in relation to the purpose behind the statute. *See Reyes*, 73 F.Supp.2d at 657–58. Detaining criminal aliens during the removal process serves the regulatory purposes of preventing aliens from absconding prior to removal, protecting the community and streamlining removal proceedings. In addition, it is not excessive in relation to the legislative objective of removing criminal aliens from the United States because it is only limited to certain enumerated aliens who Congress found pose a danger to the community and/or a risk of flight. In sum, Congress has made a reasonable finding that aggravated felons, like the Petitioner, are presumptively a threat to the community and a flight risk. Accordingly, § 236(c) is constitutional because the means that Congress has chosen to further its legislative regulatory goal are not excessive.

In addition, even if the court used a heightened standard of review, the Petitioner has not met his extremely high burden of showing that there are no circumstances under which he could be detained pending removal. *See Zgombic*, 89 F.Supp.2d at 234–35. Specifically, it does not shock the conscience that a certain class of aliens subject to almost certain removal are detained pending removal.

Consequently, because the Petitioner has no legal right to remain in the country, he has no significant liberty interest to be free on bail pending conclusion of the removal proceedings. Accordingly, § 236(c) is narrowly tailored to serve the government's stated interests, i.e., protecting the public from dangerous criminal aliens, preventing the risk of flight, insuring attendance at removal hearings and restoring the public's faith in the immigration system.

### B. *Eighth Amendment Violation*

The petitioner also asserts that the mandatory detention provisions violate his Eighth Amendment rights. There is also no merit to this claim.

The Eighth Amendment provides that "[e]xcessive bail shall not be required." Specifically, the United States Supreme Court has stated that "when Congress has mandated detention on the basis of a compelling interest other than prevention of flight ... the Eighth Amendment does not require release on bail." *Salerno*, 481 U.S. at 739, 107 S.Ct. 2095. In *Salerno*, the "compelling interest" to which the Supreme Court was referring was the safety of others. This same interest is at issue in Congress's decision to detain certain criminal aliens during removal proceedings. Moreover, the Eighth Amendment is not implicated absent punishment. Thus, there can be no constitutional violation when a Petitioner's detention is not punitive but instead is incidental to a legitimate purpose. *See Gisbert v. United States Attorney General*, 988 F.2d 1437, 1441 (5th Cir.1993).

■ The court finds that pre-removal detention is not punishment because it is incidental to the government's power to control its borders. *See, e.g., Reyes*, 73 F.Supp.2d at 659 (explaining that the Eighth Amendment does not require that petitioner be released on bond pending the conclusion of his removal proceedings); *Vo v. Greene*, 63 F.Supp.2d 1278, 1284–85 (D.Colo.1999); *Tran v. Caplinger*, 847 F.Supp. 469, 476 (W.D.La.1993); *Morrobel*

*v. Thornburgh*, 744 F.Supp. 725 (E.D.Va. 1990); *cf. Equan v. INS*, 844 F.2d 276 (5th Cir.1988) (holding that the Eighth Amendment is not applicable in removal proceedings).

Specifically, § 236(c) does not violate the Eighth Amendment because it serves a compelling government interest other than risk of flight, i.e., safety of the community. This very interest was found by the United States Supreme Court in *Salerno* to be a compelling interest that does not require bail under the Eighth Amendment. Accordingly, Congress's decision to detain certain criminal aliens during the removal process, i.e., those determined to be a danger to the community, is sufficient to support the court's finding that the Eighth Amendment is not violated by § 236(c).

### C. *Equal Protection Claim*

■ Finally, the petitioner contends that § 236(c) violates equal protection principles. Once again, the court rejects this argument.

At the outset, it is well-established that the equal protection component to the Fifth Amendment Due Process Clause applicable to the federal government derives from the Fourteenth Amendment. *See Bolling v. Sharpe*, 347 U.S. 497, 499, 74 S.Ct. 693, 98 L.Ed. 884 (1954); *Furlong v. Shalala*, 156 F.3d 384, 392 (2d Cir.1998). Accordingly, even though the Fifth Amendment itself—unlike the Fourteenth—does not contain any specific equal protection language, the INS and the statutory authority under which the INS acts must still comport with equal protection principles. *See Skelly v. INS*, 168 F.3d 88 (2d Cir.1999).

As an initial matter, the court notes that Congress deserves special deference in the area of immigration and naturalization. *See Fiallo v. Bell*, 430 U.S. 787, 792, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977); *Giusto v. INS*, 9 F.3d 8, 9 (2d Cir.1993) (per curiam). Specifically, Congress's classifications should survive an equal protection chal-

lenge so long as there is a " 'facially legitimate and bona fide reason' " for the classification. *Fiallo,* 430 U.S. at 794, 97 S.Ct. 1473 (quoting *Kleindienst v. Mandel,* 408 U.S. 753, 770, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972)); *accord Giusto,* 9 F.3d at 9–10. "Thus, a legislative scheme for [detaining] certain aliens but not others will not be set aside as the denial of equal protection of the laws if any state of facts reasonably may be conceived to justify it." *Giusto,* 9 F.3d at 10 (internal quotation marks and citations omitted). Further, the Second Circuit has concluded that rational basis review applies to alien classifications. *See generally Correa v. Thornburgh,* 901 F.2d 1166, 1173 (2d Cir.1990) (stating that the "scope of review as to [an alien's] equal protection claim is exceedingly narrow").

To prevail on his equal protection claim, the Petitioner must establish that there is no facially legitimate reason for § 236(c). Specifically, he "must establish that no set of circumstances exists under which [§ 236(c) ] would be valid." *Salerno,* 481 U.S. at 745, 107 S.Ct. 2095. Congress, however, has stated facially legitimate and bona fide reasons for subjecting certain aliens to mandatory detention under § 236(c), i.e., preventing the risk of flight, safety of the community and to increase the public's confidence in the immigration laws. As such, the Petitioner has not met his burden of establishing that there are no circumstances under which he could be lawfully detained pending removal. Accordingly, his equal protection claim fails.

### CONCLUSION

For the reasons stated above, the Petitioner's petition for writ of habeas corpus [doc. 1] is DENIED. The Clerk is directed to CLOSE this case.