

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-14-2006

# Sinclair v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-2721

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Sinclair v. Atty Gen USA" (2006). *2006 Decisions.* Paper 596.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/596

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

NO. 05-2721

_____

DAVID STAFFORD SINCLAIR,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES

_____

On Petition for Review of an Order
of the Board of Immigration Appeals
(No. A37 777 219)
Immigration Judge: Hon. Anthony C. Moscato

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 8, 2006

BEFORE:  AMBRO and STAPLETON, Circuit Judges,
and STAGG,* District Judge

(Opinion Filed:  August 14, 2006)

_____

_____

* Hon. Tom Stagg, United States District Judge for the Western District of Louisiana,
sitting by designation.

_____

OPINION OF THE COURT

STAGG, <u>District Judge</u>:

Petitioner David Stafford Sinclair ("Sinclair") is a citizen of Jamaica who seeks review of a final order requiring his removal. For the reasons set forth below, we deny his petition for review.

## I. Factual Background and Procedural History.

Because we write for the benefit of the parties, we provide only a brief account of the facts giving rise to this petition for review. Sinclair is a native and citizen of Jamaica who entered the United States as a Legal Permanent Resident ("LPR") in 1982. At all relevant times, Sinclair resided in the State of New York. Following a 1997 conviction for the criminal sale of a controlled substance in the third degree, Sinclair was sentenced to and served a term of imprisonment in New York.

On March 17, 2004, the Bureau of Immigration and Customs Enforcement ("ICE") issued a Notice To Appear ("NTA"), charging Sinclair with removability from the United States pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) as an alien convicted of an aggravated felony and pursuant to 8 U.S.C. § 1227(a)(2)(B)(i) as an alien convicted of violating a controlled substance law. The NTA instructed Sinclair to appear before the Immigration Court located in York, Pennsylvania. At his hearing before the Immigration Judge ("IJ"), Sinclair conceded the charges underlying the NTA, prompting the IJ to find him removable as charged. The IJ continued the matter so that Sinclair could properly

investigate potential avenues for relief from removal. Upon returning to court, Sinclair argued that he was a national of the United States and thus not subject to removal. The IJ rejected this contention, citing In re Navas-Acosta, 23 I. & N. Dec. 586 (BIA 2003), which held that United States nationality can only be acquired by way of birth or naturalization.

Sinclair timely filed an administrative appeal to the Board of Immigration Appeals ("BIA"), which affirmed the IJ's conclusions and rejected Sinclair's assertion that the Department of Homeland Security improperly removed his case from New York to Pennsylvania.

Sinclair then filed a Petition For Review and Motion For Stay Of Removal with this court, which we dismissed for lack of subject matter jurisdiction pursuant to the "jurisdiction-stripping" provisions of the Immigration and Nationality Act. We noted that Sinclair was not a national under the law of this Circuit, but left him free to file a habeas petition on the grounds of an alleged due process violation caused by his transfer from New York to Pennsylvania. Accordingly, Sinclair filed a habeas petition in the District Court for the Eastern District of Pennsylvania, which was transferred to this court to be treated as a petition for review pursuant to the REAL ID Act of 2005, Pub. L. No. 109-13 (2005).

## II.    Jurisdiction and Standard Of Review.

We have jurisdiction to review Sinclair's petition for review of the BIA's final order of removal pursuant to 8 U.S.C. § 1252(a)(1). Insofar as the BIA adopted the

3

findings of the IJ, we are compelled to review the decision of the IJ. See Abdulai v. Ashcroft, 239 F.3d 542, 549 n. 2 (3d Cir. 2001) ("When the BIA defers to an IJ, a reviewing court must, as a matter of logic, review the IJ's decision to assess whether the BIA's decision to defer was appropriate."). However, if the BIA issued its own opinions, rather than having summarily adopted the findings of the IJ, we must review the decision of the BIA. See Li v. Att'y Gen., 400 F.3d 157, 162 (3d Cir. 2005). The BIA's legal conclusions are subject to de novo review, "with appropriate deference to the agency's interpretation of the underlying statute . . . ." Barrios v. Att'y Gen., 399 F.3d 272, 274 (3d Cir. 2005) (citing Abdulai, 239 F.3d at 551-52).

## III.    Discussion.

Sinclair argues that he is a national of the United States, is not an alien, and therefore is not subject to removal. The crux of Sinclair's argument is that he was erroneously transferred from New York to York, Pennsylvania for his removal proceeding. Because of this transfer, he argues he was subjected to this Circuit's less favorable analysis of who qualifies as a national, rather than the more favorable analysis employed by the Second Circuit.

Title 8, section 1101(a)(22), of the United States Code defines a national as "(A) a citizen of the United States, or (B) a person who, though not a citizen of the United States, owes permanent allegiance to the United States." Relying primarily on Oliver v. INS, 517 F.2d 426 (2d Cir. 1975), Sinclair claims that the Second Circuit allows an LPR like himself, who has resided in New York since 1982 and has eight children who are

4

United States citizens, to qualify as a national. His reliance, however, is misplaced. A 2005 Second Circuit opinion clarified both its prior <u>Oliver</u> decision as well as the requirements necessary for being deemed a national. In <u>Marquez-Almanzar v. INS</u>, 418 F.3d 210 (2d Cir. 2005), the petitioner argued that he owed permanent allegiance to the United States, as exhibited by his enrollment and service in the U.S. Army, his application for naturalization, his registration for the Selective Service, his "complete immersion in American society," and his lack of ties to his native country. <u>Id.</u> at 216. Explaining its previous holding in <u>Oliver</u>, the Second Circuit stated:

> [W]e did not suggest that the petitioner in *Oliver* could have qualified as a U.S. national by affirmatively renouncing her allegiance to Canada or otherwise swearing "permanent allegiance" to the United States. In fact, in the following sentence we said that Title III, Chapter I of the INA "indicates that, with a few exceptions not here pertinent, one can satisfy [8 U.S.C. § 1101(a)(22)(B)] only at birth; thereafter the road lies through naturalization, which leads to becoming a citizen and not merely a 'national.'"

<u>Id.</u> at 217. Furthermore, the court expressed that "permanent allegiance" is not an act exhibited by a non-citizen, but rather a term that "describes the nature of the relationship between non-citizen nationals and the United States, a relationship that has already been created by another statutory provision." <u>Id.</u> Thus, 8 U.S.C. § 1101(a)(22)(B) describes United States nationality; it does not confer it. <u>See id.</u> at 218. <u>Marquez-Almanzar</u> therefore concluded that a petitioner cannot be accorded status as a national simply by manifesting his permanent allegiance to the United States. <u>See id.</u> at 218-19. It is thus apparent that Sinclair would not be considered a national even had his case been decided under Second Circuit precedent. His arguments that <u>Oliver</u> and its progeny would have

5

been more favorable to him are incorrect.

Just as Sinclair cannot establish nationality under Second Circuit precedent, he is likewise unable to demonstrate nationality under the law of this Circuit. A national is either a citizen of the United States or "a person who, though not a citizen of the United States, owes permanent allegiance to the United States." 8 U.S.C. § 1101(a)(22). For Sinclair, who is a citizen of another country, "nothing less than citizenship will show 'permanent allegiance to the United States.'" Salim v. Ashcroft, 350 F.3d 307, 310 (3d Cir. 2002); accord, Jameson v. Bureau of Immigration & Customs Enforcement, No. 05-4466, 2006 WL 1316952, at *1 (3d Cir. May 15, 2006); Smith v. Att'y Gen., No. 04-4339, 2006 WL 825692, at *2 (3d Cir. Mar. 30, 2006); Obianyo v. Att'y Gen., No. 05-4561, 2006 WL 707435, at *1 (3d Cir. Mar. 21, 2006); Kingdale v. Att'y Gen., 167 Fed. App'x 926, 928 (3d Cir. 2006). Although Sinclair applied for citizenship, his application was denied. Thus, he is not a naturalized citizen and, therefore, not a national. Instead, he is an alien subject to removal, as the BIA correctly determined.

Sinclair next asserts that the ICE's exercise of personal jurisdiction over him in Pennsylvania violated the Due Process Clause.[1] Ultimately, Sinclair argues that because he lived in New York, committed the offense underlying his removal in New York, and had no ties to Pennsylvania, his removal hearing should have been conducted in New

---

[1] Sinclair does not appear to have raised this argument before the Immigration Judge, but the BIA did not view the argument as waived, and, accordingly, we address its merits. Cf. Kayembe v. Ashcroft, 334 F.3d 231, 234 (3d Cir. 2003).

York rather than York, Pennsylvania.  Sinclair relies on the Supreme Court's leading personal jurisdiction cases to argue that because he did not have constitutionally sufficient minimum contacts with Pennsylvania and because the Immigration Court's exercise of personal jurisdiction over him did not comport with traditional notions of fair play and substantial justice, being subjected to an immigration proceeding in Pennsylvania violated his Fifth Amendment right to due process.  Sinclair argues that his only contact with Pennsylvania, his involuntary detention in the state, does not amount to "purposeful availment" of the benefits and protections of Pennsylvania's laws.

Sinclair misidentifies the relevant sovereign that exercised jurisdiction over his person.  The United States, not the Commonwealth of Pennsylvania, subjected Sinclair to administrative proceedings.  While the Immigration Court was geographically located within Pennsylvania, it exercised the sovereign power of the United States.  And though the principle is sometimes overlooked, "the United States is deemed to have personal jurisdiction over any defendant within the United States."  Oxford First Corp. v. PNC Liquidating Corp., 372 F. Supp. 191, 199 (E.D. Pa. 1974) (Becker, J.);[2] see also Busch v. Buchman, Buchman & O'Brien, Law Firm, 11 F.3d 1255, 1258 (5th Cir. 1994) ("Given

_____

[2] Oxford First, an opinion of Judge Becker's while on the District Court, is entitled to substantial weight by virtue of its persuasive force.  That persuasiveness is underscored by the approving discussion of the opinion in subsequent Third Circuit decisions and Wright & Miller.  See Pinker v. Roche Holdings Ltd., 292 F.3d 361, 370-71 n.2 (3d Cir. 2002); In re Real Estate Title & Settlement Servs. Antitrust Litig., 869 F.2d 760, 766 n.6 (3d Cir.1989); DeJames v. Magnificence Carriers, Inc., 654 F.2d 280, 286 n.3 (3d Cir. 1981); 4 Wright & Miller, Federal Practice & Procedure § 1068.1 (3d ed. 2002).

7

that the relevant sovereign is the United States, it does not offend traditional notions of fair play and substantial justice to exercise personal jurisdiction over a defendant residing within the United States."); United States v. Burke, 425 F.3d 400, 408 (7th Cir. 2005) (holding, in federal criminal prosecution, that "[p]ersonal jurisdiction is supplied by the fact that [the defendant] is within the territory of the United States"); 4 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1068.1 (3d ed. 2002) ("Despite the almost complete abandonment of territoriality as a limitation on state jurisdictional powers, the holding of Pennoyer v. Neff . . ., that a state may exercise personal jurisdiction over anyone found within its territory remains good law."). While a federal district court's capacity to exercise personal jurisdiction in civil suits is often constrained by the long-arm statute of the state in which it sits pursuant to Federal Rule of Civil Procedure 4, governing service of process, Congress has not provided for any such limitation with respect to immigration courts. To the contrary, Congress vested the Secretary of the Department of Homeland Security with full authority to implement the nation's immigration laws. The Secretary delegated his authority to conduct removal proceedings to the immigration courts, consistent with the framework of the implementing regulations.[3]

---

[3] The statutes grant authority to the Attorney General to detain aliens pending decisions on removal. See 8 U.S.C. §§ 1231(g)(1), 1226(c)(1). Further, the place of detention is left to the discretion of the Attorney General. See 8 U.S.C. § 1231(g)(1) ("The Attorney General shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal."); Gandarillas-Zambrana v. BIA, 44 F.3d 1251, 1256 (4th Cir. 1995) ("The INS necessarily has the authority to determine the location of detention of an alien in deportation proceedings . . . and therefore, to transfer

8

Thus, if any type of "minimum contacts" analysis is appropriate at all, it would be an inquiry analogous to that attendant to a federal statute authorizing service of process based on "national contacts." Sinclair, a permanent resident of the United States, clearly has sufficient contacts with the United States as a whole to support personal jurisdiction.

In the context of a "national contacts" analysis, our court has also looked to whether "the exercise of personal jurisdiction is consistent with 'traditional notions of fair play and substantial justice.'" Pinker v. Roche Holdings Ltd., 292 F.3d 361, 370-71 (3d Cir. 2002) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). However, we have not yet decided whether such an inquiry is required by Fifth Amendment due process. See id. at 371 n.2 (acknowledging that we have "hinted that a fairness analysis consisting of more than an assessment of the defendant's national contacts would be appropriate," but declining to decide whether such an analysis is appropriate).

Aside from his lack of contact with Pennsylvania, Sinclair has not articulated any reason why the location of his removal proceedings in Pennsylvania was unfair. He has

---

aliens from one detention center to another."); Rios-Berrios v. INS, 776 F.2d 859, 863 (9th Cir. 1985) ("We are not saying that the petitioner should not have been transported to Florida. That is within the province of the Attorney General to decide."); Sasso v. Milhollan, 735 F. Supp. 1045, 1046 (S.D. Fla. 1990) (holding that the Attorney General has discretion over location of detention).

The regulations provide that "[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the Service." 8 C.F.R. § 1003.14(a). In addition, the regulation governing venue provides that "[v]enue shall lie at the Immigration Court where jurisdiction vests pursuant to § 1003.14." 8 C.F.R. § 1003.20(a). Thus, under the terms of the statute and regulations, the Immigration Court in York, Pennsylvania was authorized to conduct Sinclair's removal proceeding because that is where the charging document was filed.

not, for example, argued that the location of the proceeding interfered with his right to counsel. Cf. Chlomos v. INS, 516 F.2d 310, 314 (3d Cir. 1975) (holding that discretionary decisions of immigration authorities may not, consistent with due process, unduly interfere with alien's right to counsel). Furthermore, it bears noting that York, Pennsylvania is roughly 200 miles from Sinclair's residence in Brooklyn, New York–a distance far shorter than, for example, the distance from Pittsburgh to Philadelphia. See Oxford First, 372 F. Supp. at 201 ("[D]ue process cannot be measured by the number of state borderlines one must cross."). For these reasons, we deny Sinclair's petition for review.